## GEORGE LEAVITT *vs.* FIBERLOID COMPANY.

Essex.    June 18, 1907. — November 25, 1907.

Present: KNOWLTON, C. J., LORING, BRALEY, SHELDON, & RUGG, JJ.

*Negligence,* Of manufacturer of dangerous article, *Res ipsa loquitur. Evidence,* Extrinsic affecting writings, Presumptions and burden of proof, Relevancy and materiality. *Sale,* Warranty. *Contract. Damages. Practice, Civil,* Conduct of trial.

At the trial of an action for negligence in the manufacture of a substance known as fiberloid, from which combs are made, it appeared that the defendant, who was the manufacturer, and the plaintiff, the purchaser from the defendant, both knew that the substance was highly inflammable. There was no evidence that the defendant knew of any imperfection in the particular material sold by him to the plaintiff, or knew that it would ignite at any temperature different from that at which such material ordinarily would ignite. There was evidence tending to show that all the usual precautions had been taken by the defendant in the manufacture of the material which was sold to the plaintiff to render it safe for making up into combs by the process ordinarily used. The plaintiff, in order to prove negligence on the part of the defendant, relied solely on the fact that, while with care he was heating the material by the ordinary process for the purpose of making it up into combs, it ignited at a temperature far below that at which it should have ignited, and caused a conflagration. *Held,* that the mere happening of the accident was not sufficient evidence to show negligence on the part of the defendant.

One who had purchased in January from the manufacturer a substance known as fiberloid, a material from which combs are made, complained in March to the manufacturer's agent that the fiberloid furnished was not of proper quality, and the agent then stated that in the future "the stock would be all right," that he "would guarantee it to be all right." In October the purchaser bought a new lot of the fiberloid which, due to a defect in its manufacture, ignited and caused a conflagration. In an action of contract brought by the purchaser for breach of warranty, it was *held,* that there was evidence of an express warranty,

it not being necessary that the warranty should be simultaneous with the sale, a reasonable inference being that it entered into the sale as finally made.

In an action for breach of warranty in the sale of an inflammable substance known as fiberloid, used for the manufacture of combs, it appeared that the defendant's agent assured the plaintiff in March that all future sales would " be all right," that he would " guarantee " them, and that the lot which was alleged not to satisfy the warranty was sold to the plaintiff in the following October in response to an order in writing reading, " Please send at the earliest date possible . . . 1 sheet No. 60 shell," a bill of parcels accompanying the shipment which read, " Fiberloid sold to " the plaintiff " 2½ lbs. No. 176 60/1000 H. H." The defendant contended that, the order and the bill of parcels being in writing, the evidence of the oral promise of the agent should not be admitted to vary them. *Held,* that the order and the bill of parcels did not constitute a formal contract into which all previous negotiations were merged.

At the trial of an action for breach of a warranty of the quality of a highly inflammable substance known as fiberloid, sold by the defendant to the plaintiff and understood by both of them to be intended to be manufactured into combs by the plaintiff by the use of a process which would subject the material to heat, it appeared that the inflammable nature of the substance was understood by both parties and that there had been some controversy between them, both orally and by letter, regarding lots previously sold to the plaintiff by the defendant which had been unsatisfactory. There was evidence tending to show that, in March, the defendant's agent had told the plaintiff that future shipments would be " all right," that he would " guarantee " them. The lot which was the subject of this action was sold to the plaintiff in the following October. The evidence tended to show that, while with care it was being subjected by the plaintiff to a heat ordinarily used with safety in the process of making up the fiberloid into combs, the lot in question ignited and the plaintiff's entire factory was burned. The presiding judge ruled that the measure of damages was merely the difference in value between the goods which the plaintiff should have had and those which he in fact received. *Held,* that there was evidence from which findings would have been warranted that all natural and probable consequences which might result from the material sold being of inferior quality were in the contemplation of the parties when they made the agreement of warranty, and that the conflagration was a natural and probable consequence of the breach of the warranty ; and that, if such findings were made, the plaintiff was not limited to the recovery of damages according to the rule laid down by the presiding judge, but could recover for the loss of his factory by fire.

At the trial of an action for breach of warranty in the sale of a substance known as fiberloid, used in the manufacture of combs, it appeared that fiberloid was by nature highly inflammable and known to be so by both the plaintiff and the defendant. There was evidence warranting a finding that the defendant, when he sold the fiberloid to the plaintiff, understood that it was to be used by him in the manufacture of combs by a process that subjected it to heat, and that fiberloid of proper quality could be subjected to heat by such process without igniting, but that the fiberloid furnished to the plaintiff did ignite while being subjected to an ordinary amount of heat under proper conditions, and that the plaintiff's factory was burned. *Held,* that there was evidence from which the jury might find that there was an implied warranty of merchantability of the fiberloid furnished, that the warranty was broken and that the burning of the plaintiff's factory was a proximate result of the breach of the warranty ; and that, if such findings were made, the plaintiff should be compensated for such loss in damages.

At the trial of an action for breach of warranty, where a question at issue was whether the defendant used proper care in manufacturing the goods which he sold to the plaintiff, an employee of the defendant was asked in cross-examination how many men were employed by the defendant upon a certain part of the work, and the plaintiff offered to show that in the practical working of the defendant's factory there was a great difference in the stock turned out. The presiding judge excluded the question as to the number of men employed. There was no ruling on the broader offer of proof. *Held*, that the subject inquired of in the question was collateral to the issues in the case, and that the presiding judge in the exercise of his discretion excluded the question properly.

At the trial of an action for breach of a warranty of a substance known as fiberloid sold to the plaintiff by the defendant, it appeared that the goods which were alleged not to satisfy the warranty were sold to the plaintiff in October, that other sales had been made in the previous January as to which there had been correspondence and conversations between the parties relating to what the plaintiff contended was inferiority in quality, and that in March the defendant's agent had promised that future shipments would be "all right." The plaintiff offered in evidence the letters written in January, February and March, and the presiding judge admitted them. *Held*, that the letters properly were admitted as tending to show the relations of the parties at or about the time of the alleged warranty.

CONTRACT OR TORT, for damages resulting from the burning of "fiberloid" alleged to have been manufactured improperly and sold to the plaintiff by the defendant. Writ in the Superior Court for the County of Essex dated February 14, 1906.

There was a trial before *Wait*, J. The order written to the defendant by the plaintiff, mentioned in the fourth paragraph of the opinion, read as follows: "Dear Sir: Please send at the earliest date possible, 10 sheets of 175 shell and 1 sheet No. 60 shell, and oblige, Yours truly, Mr. Geo. Leavitt, Peerless Mfg. Co., Salisbury, Mass."; and the bill of parcels mentioned in the same paragraph was as follows:

"Fiberloid."

"Indian Orchard, Mass., Oct. 18th, 1905.

"Sold to Peerless Mfg. Co., Salisbury, Mass.

| 80 1/4 Lbs. | No. 176 | 175/1000 H. H. | | |
| 2 1/2 " | " | 60/ " " | | |
| 82 3/4 " | | | .90 | 74.47 " |

The plaintiff excepted to the rulings of the presiding judge stated in the opinion, directing a verdict for the defendant on the count in tort, and restricting the damages to be recovered by the plaintiff under the count in contract. The defendant excepted to his refusal to give certain rulings requested which

are sufficiently stated in the opinion. Other facts are stated in the opinion.

The case was submitted on briefs.

*A. Withington & R. E. Burke,* for the plaintiff.

*J. H. Casey, N. N. Jones & E. Foss,* for the defendant.

RUGG, J. The declaration contains two counts. The first count is in tort, and alleges that the defendant sold to the plaintiff certain comb stock known as fiberloid, which it had negligently manufactured, whereby fire ensued while the stock was being used in the ordinary way, causing damage to the property of the plaintiff. The second count is in contract, and alleges that the plaintiff purchased of the defendant, who was the manufacturer, fiberloid stock, respecting which the defendant made certain warranties, and that by reason of the stock not being as warranted it took fire and caused the plaintiff damage.

There was evidence tending to show that the defendant manufactured a substance used for making combs, called in the trade fiberloid, which both parties knew to be a highly inflammable material. The plaintiff was an experienced manufacturer of combs from this substance, and had bought such stock from the defendant for about three years. In January, 1905, certain stock was bought by the plaintiff of the defendant, which in manufacture worked badly by blistering and igniting, and later, but prior to March, 1905, an agent of the defendant said to the plaintiff, after the latter had made complaint of stock previously furnished, but not at the time any order for stock was given, that in the future " the stock would be all right, he would guarantee it to be all right." On October 13, 1905, after intervening purchases, the plaintiff ordered by mail certain stock of the defendant, a sheet of which, when put in process of manufacture in the ordinary way, caught fire, and caused the damage to other property of the plaintiff. In the Superior Court a verdict was directed for the defendant upon the count in tort, and the case was submitted to the jury upon the count on certain warranties, with instructions that the measure of damage was the difference in value of the goods, which the plaintiff ought to have had, and what he did in fact get, and that damage caused to other property of the plaintiff by the ignition of the sheet of fiberloid must be left out of consideration.

1. The verdict for the defendant upon the count in tort was ordered rightly. The defendant was the manufacturer of the goods sold, and they were purchased by the plaintiff in the ordinary course of trade. The order of the plaintiff was for " 1 sheet No. 60 shell " fiberloid, and he testified, " I got just what I ordered." The only testimony as to the bad quality of the sheet of fiberloid was of the plaintiff that it caught fire when subjected to the usual temperature for working the material into combs. There was no evidence tending to show knowledge on the part of the defendant of an imperfection in this particular stock, or that it would catch fire at any lower temperature than that at which such material would ordinarily ignite. There was affirmative testimony to the effect that it was manufactured in the ordinary way, and that all the precautions, as to washing and otherwise, rendering it as safe for use as was consistent with its nature, were employed in the processes. Under these circumstances, the mere happening of an accident in the use of the stock is not sufficient to make out a case of negligence on the part of the defendant. *Gould* v. *Slater Woolen Co.* 147 Mass. 315. *Standard Oil Co.* v. *Murray*, 119 Fed. Rep. 572. Both parties were aware that they were dealing with a highly inflammable substance. The duty bore upon the plaintiff as hard as upon the defendant to act with reference to this knowledge. The case is different where the manufacturer or seller is in possession of information not known or communicated to the purchaser. An obligation rests upon the one who delivers an article, which he knows, or ought to know, to be peculiarly dangerous, to give notice of its character or bear the natural consequences of his failure to do so. *Wellington* v. *Downer Kerosene Oil Co.* 104 Mass. 64. *French* v. *Vining*, 102 Mass. 132. *Provost* v. *Cook*, 184 Mass. 315. *Huset* v. *Case Threshing Machine Co.* 120 Fed. Rep. 865. There is lacking in the plaintiff's case the essential element of knowledge on the part of the defendant of the particular danger of which complaint is made, or of facts from which such knowledge might fairly be inferred, and there is present the element of knowledge by the plaintiff of a hazard in the use of the goods, of the same general character as that of which he complains, namely, an inherent tendency to take fire. See *Lebourdais* v. *Vitrified Wheel Co.* 194 Mass. 341.

2. There was sufficient evidence to support a finding that there was an express warranty by the authorized agent of the defendant. The conversation, from which this might be inferred, occurred between January 2 and March 18. The agent of the defendant said to the plaintiff, he " would see the stock was all right, he would guarantee it would be all right." Although no purchase was made at this time, it may fairly have been contemplated by the parties that this was a continuing offer of guarantee, and that whatever goods within a reasonable time were bought by the plaintiff of the defendant upon the strength of the statement would be protected by it. The parties had been discussing some goods purchased recently before by the plaintiff from the defendant, which had caught fire or blistered. It was in view of those past events that the statement was made. Its reasonable effect was to reassure the plaintiff that in the future there would be no similar trouble. It is not necessary that the giving of the warranty should be simultaneous with the sale. It is enough if it is made under such circumstances as to warrant the inference that it enters into the contract as finally made. Nor is the fact that the alleged warranty was oral, while the order for and bill of parcels of the fiberloid, which caused the damage, were in writing, enough to exclude the conversation under the rule that a written contract cannot be varied by parol evidence. The letter and bill of parcels were not a formal contract of such dignity as necessarily to indicate that all previous negotiations were merged in them. The evidence as to the alleged guarantee was admissible. *Drew* v. *Wiswall*, 183 Mass. 554. *Morton* v. *Clark*, 181 Mass. 134. *Durkin* v. *Cobleigh*, 156 Mass. 108. *Atwater* v. *Clancy*, 107 Mass. 369. *Vincent* v. *Leland*, 100 Mass. 432. *Weston* v. *Boston & Maine Railroad*, 190 Mass. 298. *North Packing & Provision Co.* v. *Lynch*, ante, 204. *Lloyd* v. *Sturgeon Falls Pulp Co.* 85 L. T. (N. S.) 162. *DeLassalle* v. *Guildford*, [1901] 2 K. B. 215. *Cowdy* v. *Thomas*, 36 L. T. 22. *Palmer* v. *Johnson*, 13 Q. B. D. 351, 357. *Allen* v. *Pink*, 4 M. & W. 140. *Routledge* v. *Worthington Co.* 119 N. Y. 592. *Perrine* v. *Cooley*, 10 Vroom, 449.

3. Assuming that an express warranty be found to exist, it is necessary to determine the measure of damages to which the plaintiff is entitled. Upon any breach of contract, whether of

warranty or otherwise, the defendant is liable for whatever damages follow as a natural consequence and the proximate result of his conduct, or which may reasonably be supposed to have been within the contemplation of the parties at the time the contract was made as a probable result of a breach of it. *Goddard* v. *Barnard*, 16 Gray, 205. *Mowbray* v. *Merryweather*, [1895] 2 Q. B. 640. *Boston Woven Hose & Rubber Co.* v. *Kendall*, 178 Mass. 232. The principle is ancient and familiar. The only difficulty lies in its application. A review of some of the cases, wherein the natural and probable consequences of certain acts have been considered, will illumine the path upon the facts now presented. In *Boston Woven Hose & Rubber Co.* v. *Kendall*, 178 Mass. 232, there was a warranty by the manufacturer that an iron boiler would bear a pressure of one hundred pounds to the square inch of surface. Upon breach of this warranty the plaintiff was held entitled to recover for compensation paid by the purchaser to its employees injured through an explosion of the boiler occurring by reason of a breach of the warranty. See also *Rodgers* v. *Niles*, 11 Ohio St. 48. *Sinker* v. *Kidder*, 123 Ind. 528. In *Manning* v. *Fitch*, 138 Mass. 273, upon a breach of an agreement not to foreclose a mortgage upon a farm known by the defendant to be used by the plaintiff for the purpose of producing milk, the plaintiff was permitted to recover the money value of the farm to one engaged in that special business. In *Fox* v. *Boston & Maine Railroad*, 148 Mass. 220, the plaintiff was permitted to recover as damages for breach of contract by the defendant to deliver apples to a connecting line, so that they would reach Bangor by a certain time, the loss occasioned by reason of a sudden drop in temperature. In *Whitehead & Atherton Machine Co.* v. *Ryder*, 139 Mass. 366, on breach of an express warranty that a machine made by an English manufacturer would be fit for peculiar work in this country, the plaintiff was permitted to recover the expenses incurred in a reasonable but unsuccessful attempt to adapt the machine to the purposes, for which it was constructed. In *Abbott* v. *Hapgood*, 150 Mass. 248, the plaintiffs were held entitled to recover damages in view of a declared purpose on their part to use the machinery bargained for in carrying on the business of a new organization, of which they were to be the members. *Derry* v. *Flitner*, 118 Mass. 131, held

that it might be found to have been reasonably anticipated "according to common experience and the usual course of events" that the wrongful refusal to permit vessels to moor at a place of safety might expose them to storm and cause their loss. In _Turner_ v. _Page_, 186 Mass. 600, it was stated "that among the natural and probable consequences of negligently letting a pair of horses run away, it is competent to find that they will swerve to one side or the other on account of the acts of persons who try to stop them in a way which would not have been adopted by a prudent man." In _Edgar_ v. _Joseph Breck & Sons Corp._ 172 Mass. 581, upon a breach of warranty for a sale of certain lily bulbs known as longiflorum, the measure of damages was held to be the difference between the value of the crop, which the plaintiff was able to raise from the inferior bulbs furnished, and a crop of longiflorums. See _Randall_ v. _Raper_, El., Bl. & El. 84, 90. _O'Brien_ v. _Worcester_, 172 Mass. 348, held that loss of rents and reasonable compensation for trouble and expense in respect of real estate were among the natural and proximate results of a wrongful discontinuance of a connection of the plaintiff's house with a sewer, and "such as reasonably might be supposed to have been within the contemplation of the parties if at the time of the doing of the act they had taken thought of the consequences likely to ensue." To the same point see _Allen_ v. _Boston_, 159 Mass. 324. In _Koplan_ v. _Boston Gas Light Co._ 177 Mass. 15, it was held that among the natural and probable consequences of suffering gas to accumulate in a chamber, to which several people had access, might be found to be the ignition of the gas by natural cause or by the intervention of some person for whom the defendant was not responsible. The natural consequence of a negligent failure to deliver theatrical property for use in previously advertised exhibitions was held to be the loss of the ordinary gross earnings from such exhibitions, less such expenses as he had been saved by being prevented from having them, in _Weston_ v. _Boston & Maine Railroad_, 190 Mass. 298. The same rule of damages was established as to delay in the delivery of samples for exhibition at a cattle show, in _Simpson_ v. _London & Northwestern Railway_, 1 Q. B. D. 274. In _Ingraham_ v. _Pullman Co._ 190 Mass. 33, it was intimated that if a direct result of a breach of contract to furnish a drawing-room for an invalid was injury

to the plaintiff's health, recovery might be had therefor. It was determined in *Bradley* v. *Rea*, 14 Allen, 20, that the natural and probable result of selling animals infected with an infectious disease was the spread of the infection among the other animals. To the same point see *Mullett* v. *Mason*, L. R. 1 C. P. 559. In *Hyde* v. *Mechanical Refrigerating Co.* 144 Mass. 432, the natural consequence of a failure to store fruit at a temperature not exceeding a certain height was held to be the decay of fruit and consequent loss in its value. To the same point, see *Beeman* v. *Banta*, 118 N. Y. 538. *Stock* v. *Boston*, 149 Mass. 410, decided that the natural result of exposing a water pipe connected with the plaintiff's greenhouse in cold weather, so that it froze, might be the destruction of the plants in the greenhouse. In *Metallic Compression Casting Co.* v. *Fitchburg Railroad*, 109 Mass. 277, the plaintiff was permitted to recover damages occasioned by fire as the natural result of the cutting off a hose through which firemen were throwing a stream upon a burning building. *Peak* v. *Frost*, 162 Mass. 298, held that, upon false representations as to a horse bought for breeding purposes, it was competent for the jury to find that the expense of keeping the animal for a sufficient length of time to test his capacity was contemplated as a direct result of the wrong done. In *Bostock* v. *Nicholson*, [1904] 1 K. B. 725, in a suit for sale of sulphuric acid used for food, which contained arsenic, recoupment was permitted as for a breach of warranty, not only for the value of the acid but the value of goods rendered useless by being mixed with the poisonous acid. In *Smeed* v. *Fword*, 1 El. & El. 602, and *Frohreich* v. *Gammon*, 28 Minn. 476, actions for failure to deliver a threshing machine and breach of warranty of a harvester, respectively, it was held that the loss or serious injury by rain of a crop of wheat might be found to be the natural result of the breach of duty of the defendant. In *Borradaile* v. *Brunton*, 8 Taunt. 535, upon a breach of warranty upon the sale of a chain cable, damages were recovered not only for the loss of the chain, but also of the anchor. In *Brown* v. *Edgington*, 2 Man. & G. 279, recovery of the value of a pipe of wine lost by the breaking of a rope warranted fit for use upon a crane was permitted. In *Atkinson* v. *Newcastle & Gateshead Water Works Co.* L. R. 6 Ex. 404, the defendant corporation was obliged by its charter to keep

water at a certain pressure in its pipes upon which were fire plugs. The plaintiff suffered a loss by fire by reason of a failure of water. It was argued that the damage was too remote, but Kelley, C. B., said, "What kind of damage can be a more proximate consequence of the want of water than the destruction by fire of a house which a proper supply of water would have saved?"

While none of these authorities nor of many others to be found upon the subject present facts exactly like the case at bar, they furnish guidance for its determination. There had been a course of dealing between the plaintiff and defendant respecting fiberloid. It had been claimed by the plaintiff that certain fiberloid, which he had bought of the defendant, blistered and ignited at a temperature which was common in the process of manufacturing the stock. There were both correspondence and oral conference upon this subject. Thus there was called to the attention of the defendant the specific difficulty which had caused the plaintiff trouble. Thereupon an agent of the defendant gave what might be found to be an express warranty against the goods catching fire again under these circumstances. Goods of this sort, when made in the ordinary way, might be liable to burst into flame under the heat common in their further manufacture, and yet might be merchantable and salable as fiberloid, even though possessing this characteristic. If this be so, there would be no implied warranty against such inflammability, and the plaintiff would have no remedy for ignition under an unqualified purchase in ordinary course of trade. The purpose of an express warranty may have been to secure for the plaintiff additional protection. The natural and proximate result of kindling a fire in a shop, where highly inflammable substance is in process of manufacture, might be found to be a conflagration. But at most the express warranty was directed only against fire being started in such a shop from the goods in process of manufacture in the usual way. It may be found to be a reasonable inference that, if the parties had given any consideration to the consequences likely to ensue from a breach of this warranty, they would have thought of a conflagration in the plaintiff's factory, and the possible destruction of his property. A strong argument arises from many aspects of the evidence that this was not what the parties had in mind in giving and accepting the war-

ranty. But it cannot be said as matter of law that the opposite inference cannot possibly be drawn. It must appear that the conflagration ensued from a breach of the warranty, while the process of manufacture was being conducted in the usual way and with all the safeguards and precautions, which the use of a substance so liable to ignite from slight causes imposed upon the. plaintiff, and that it did not result from any heedlessness, oversight or want of ordinary forethought on his part to guard against the ever present danger of fire. The case disclosed upon the record is close as to this point, but falls just within the domain of fact. If the burden is sustained by the plaintiff, both upon the issue that possibility of conflagration caused by the ignition of the fiberloid while being heated by the plaintiff was within the scope of the warranty, and that his injury was caused by a breach of the warranty and not by other agencies, .then a case arises where the usual rule, that damages, may be recovered for the difference between the value of the goods delivered and those called for by the contract, is not applicable, but where a more liberal one must prevail. _Harriott_ v. _Plimpton_, 166 Mass. 585. _Merrimack Manuf. Co._ v. _Quintard_, 107 Mass. 127. _Kellogg Bridge Co._ v. _Hamilton_, 110 U. S. 108. _Swain_ v. _Schieffelin_, 134 N. Y. 471. _Parks_ v. _Morris Ax & Tool Co._ 54 N. Y. 586. _Thoms_ v. _Dingley_, 70 Maine, 100. _Jones_ v. _George_, 61 Texas, 345. But if the jury find that the danger of ignition of the fiberloid in the process of heating was understood by the parties to be so great as to call for such precautions in regard to the place and manner of heating as would make it unlikely that flame from it should be communicated to the building, and if it was expected and understood that the plaintiff would take these precautions, and he failed to do so, the defendant is not liable for the destruction of the building from this cause. In other words, the defendant would not be liable for the larger measure of damages unless the jury find that the plaintiff's building caught fire from this fiberloid while it was being made into combs in the common and ordinary way. The plaintiff's exception as to the rule of damages laid down by the Superior Court upon the breach of an express warranty must be sustained.

4. The case was submitted to the jury upon the allegations both of express and implied warranty. The verdict was a gen-

eral one. As a new trial must be had, at which it is conceivable that the jury might find for the defendant upon the issue of whether there was an express warranty, and for the plaintiff upon that of an implied warranty, it is necessary to determine the rule of damages upon this aspect.

It is argued that, under the circumstances disclosed there was an implied warranty on the part of the defendant that the stock purchased would prove to be reasonably safe for the uses to which it was put by the plaintiff. Where goods of a character commonly known in trade are ordered by description, and there is no inspection, there is an implied warranty that those furnished will be such as are merchantable under the descriptive term used by the parties. The purchaser is entitled to get what he ordered. *Alden* v. *Hart*, 161 Mass. 576. *Murchie* v. *Cornell*, 155 Mass. 60. *Day* v. *Mapes-Reeve Construction Co.* 174 Mass. 412. *Gossler* v. *Eagle Sugar Refining Co.* 103 Mass. 331. When there is a sale by a manufacturer of a product, having a specific designation and reasonably capable of being so manufactured that it will contain no latent defect, then there is an implied warranty of merchantability, except where circumstances, as to inspection or otherwise, are such as to indicate that the buyer relies on his own judgment, and not on the skill of the manu-facturer. *Cunningham* v. *Hall*, 4 Allen, 268, 273. *Hight* v. *Bacon*, 126 Mass. 10. But if the article ordered is of a general charac-ter, and not for a specifically indicated purpose, even though the manufacturer may know that it was intended by the purchaser to be used in the process of further manufacture, there is no implied warranty that it shall answer the particular uses of the purchaser. *Wilson* v. *Lawrence*, 139 Mass. 318. *Whitmore* v. *South Boston Iron Co.* 2 Allen, 52, 58. *Mixer* v. *Coburn*, 11 Met. 559. *De Witt* v. *Berry*, 134 U. S. 306, 313. *Seitz* v. *Brewers' Refrigerating Ma-chine Co.* 141 U. S. 510. The parties to the sale in the present case were the manufacturer of fiberloid on the one side, and the manufacturer of combs, in whose business fiberloid was a neces-sary factor, on the other. Use of the goods purchased in this process of secondary manufacture may have been known to and in contemplation of both parties as the purpose of the purchase. The seller may have known, and the buyer have had a right to assume, that they were designed and reasonably fit to be used

by the methods and under the conditions and with the instrumentalities common in that branch of manufacture. But there is nothing to show that the particular instrumentalities or factory conditions, as to exposed flame and other appointments, of the plaintiff were in contemplation of both parties in making the sale. If the goods sold by the defendant were of such a nature that, in the ordinary course of manufacture, they were liable to burst into flame, when subjected to the heat usually applied in process of further manufacture, and were not ordinarily manufactured so as not to have this character, then, in the absence of express warranty, everybody would be presumed to contract with reference to this attribute, and there would be no implied warranty against inflammability. If, with the likelihood to burst into flame under the conditions to which the plaintiff subjected them made known, the goods would still have been properly describable in the market as fiberloid, and have been fit for sale and for some valuable use under that designation, then the implied warranty of merchantability would have been satisfied. Under these circumstances they would not have been unfit for market, for sale, or for some profitable use. It was this principle which was applied in *Wilson* v. *Lawrence*, 139 Mass. 318. It would then be within the contemplation of the parties that the user of fiberloid for further manufacture would so arrange his factory that the bursting into flame of the material would cause no substantial damage. If, however, the goods as ordinarily manufactured, although highly inflammable, were not commonly liable to burst into flame when subjected to the usual heat in secondary manufacture, and there is no inspection or other circumstance showing that the parties are dealing with each other at arm's length, and the goods, possessing the characteristic of bursting into flame in the ordinary process of further manufacture, have no substantial value for any use and are not properly described in the market as fiberloid, then there is a breach of the implied warranty of the vendor, when he is the manufacturer, that the goods are merchantable or fit for the ordinary uses to which goods of that name are put. Perhaps a more exact statement is that the seller has failed to perform his contract, by not delivering the thing, which he contracted to deliver, but by delivering a different thing. When such a situation .

exists, then the parties may be found to have contracted with reference to the possible results of such a breach of the contract. When there is no fraud or deceit, the ordinary rule of damages is that the plaintiff is entitled to recover the difference in value between the article which he bargained for and that which he received. *Bartlett* v. *Blanchard*, 13 Gray, 429. *Wiley* v. *Athol*, 150 Mass. 426. But it may be found that the delivery of an article having different qualities from that ordered, which were not discoverable by inspection, reasonably justified the plaintiff in using it as he would have used the article ordered, and that thereby injury in excess of the value of the property bought ensued as a proximate result, and that such injury ought to have been apprehended by a prudent manufacturer and seller. If this be found to be so, the vendor may be compelled to indemnify the purchaser against whatever loss might have been anticipated to arise in the ordinary course of events from a failure to supply the goods ordered. For such a breach, whether it be described as of contract to deliver or of implied warranty of merchantability, the rule of damage is the same as that heretofore stated in discussing the principles applicable to a breach of an express warranty, but with the limitations and qualifications there set forth. Whatever may be said as to the weight of evidence in the case now before us, it cannot be ruled as matter of law that it is impossible for a jury to find that a natural consequence or a result, which may be found to have been within the contemplation of the parties as likely to follow from failure to deliver such fiberloid as was ordered, was a fire in the plaintiff's factory. *Kellogg Bridge Co.* v. *Hamilton*, 110 U. S. 108, 118. *Carleton* v. *Lombard*, 149 N. Y. 137. *Jones* v. *Padgett*, 24 Q. B. D. 650. *Jones* v. *Just*, 3 Q. B. D. 197. *Shepherd* v. *Pybus*, 3 Man. & G. 868. *Drummond* v. *Van Ingen*, 12 App. Cas. 284.

5. Two questions of evidence have been argued. One Nims, a chemist, employed and called as a witness by the defendant, had testified that washing was an important part of the process of manufacture for the purpose of reducing acid in the stock and not to render it less inflammable. He thereupon was asked, in cross-examination, how many men were employed in washing in the defendant's plant, the offer being made to show that in the practical working of the defendant's plant there was a great

difference in the stock put out. Upon this question and offer the court ruled: "I will exclude the question and save the exception as to how many men they have at work in washing off the acid." It is to be observed that the ruling was upon the specific question as to the number of men, and not upon the broader offer of proof. The number of men employed in a particular process at the defendant's factory had no probative force upon any of the issues in dispute. Any restriction of inquiry respecting such a collateral matter was within the discretion of the trial court.

The defendant argues that certain correspondence between the plaintiff and defendant covering a period of time between January 20, 1905, and March 14, 1905, should have been excluded. So far as the contents of any of these letters are material or harmful to the defendant, they bear upon the relations existing between the parties at or about the time of the alleged warranty, and were admissible as tending to throw some light upon its scope and the circumstances under which it was given.

The only error disclosed upon the record being as to the ruling respecting damages, by agreement of parties the entry must be, new trial granted upon the question of damages only.

*So ordered.*