WEST END MANUFACTURING COMPANY *vs.* P. R. WARREN COMPANY.

Suffolk.    December 11, 1907. — April 3, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Sale. Pleading, Civil,* Answer. *Evidence,* Extrinsic affecting writings. *Contract,* Implied.

In an action for the price of goods sold and delivered the defendant may show under a general denial that the sale was of goods to be of a grade suitable for a particular purpose and that the goods delivered were of a grade not fit for that purpose.

In an action for the price of goods sold and delivered it appeared that the goods consisted of " Manila lined chip," a material used in making boxes, and that there are two qualities of this material, one which does not bend at all and the other which bends more or less according to grades, that the goods were sent in response to an order in writing, with specifications, which was mailed to the plaintiff by the defendant as the result of previous interviews between the parties at which samples were shown and the grade of the material to be purchased was discussed. The order and specifications contained no reference to the samples or to the particular grade of Manila lined chip which was desired.

There was some evidence from the manufacturer of the goods that the specifications meant bending board intended for a collapsible box. The defendant, a corporation, asked its general manager whether he ordered the material for stiff boxes or folding boxes, and offered to show that it was ordered for the specific purpose of making folding boxes, and that it was to have more folding qualities than the material sent by the plaintiff. The judge excluded the question. *Held*, that the evidence should have been admitted; that the defendant had the right to show that the order, when interpreted as it was understood by those familiar with the trade, meant material to be used in making folding boxes and that the goods delivered did not correspond with the description contained in the specifications thus interpreted.

If by agreement of the parties to a contract goods are to be manufactured or sold by a dealer for a particular purpose it is an implied term of the contract that they shall be fit for that purpose.

Where goods are shipped in response to an order in writing containing separate specifications for two different kinds of articles with a specified price for each, and in accordance with the terms of the order they are loaded on the same car in such a way as to be distinguished from each other, and, also in accordance with the terms of the order, the articles of one kind are taken from the car to be subjected to a certain process while the articles of the other kind remain in the car as it stands on a siding, and afterwards the articles subjected to the process are returned to the car and the whole are forwarded to the buyer, the contract may be found to be severable as to the different kinds of articles, and in that case the subjecting of the articles of one kind to the process is not evidence of the acceptance of the articles of the other kind which remained on the car.

CONTRACT for goods sold and delivered as stated in the opinion. The answer was a general denial. Writ dated April 14, 1906.

In the Superior Court the case was tried before *Hardy*, J. The order for the goods was contained in the following letter of the defendant addressed to the president of the plaintiff:

"Mr. F. G. Perkins, Pres.
West End Manufacturing Co.,
73 Murray Street,
New York, N. Y.

" Dear Mr. Perkins:

" I have before me your letters of the 10th, 16th and 18th and trust you will pardon my delay in making reply. I have been very busy of late and I turned your financial letter of the 10th over to Mr. Warren and trust he will take the matter up immediately.

" Telegram sent you was telephoned from our office to the telegraph company. This accounts for the end and tail of our firm name being omitted.

" Enclosed herewith are specifications for a car of Manila lined chip, and in looking it over you will see that we have made the sizes so that they will almost entirely fill up the machine.    This car you will please have shipped to the Whitmore Manufacturing Company, Holyoke, Mass., and in loading it, please instruct your mill to put the sheet stock in the car first, leaving the space near the doors for the rolls.    It is our purpose to have this roll stock coated white and we think we can arrange with the Whitmore people to permit the car to remain on their siding while this stock is being coated, and when it is finished the whole car can come forward to us here.    We hope you will emphasize this point of loading, for it would be extremely inconvenient if the matter is overlooked and it will become necessary to handle the whole car of stock to get the rolls out.

" I will take up with Mr. Warren this morning the matter referred to in the last paragraph of your letter of yesterday.

" Shall be glad to hear from you in regard to the coated stock proposition when you are ready to talk.

" With kindest regards always,

Yours sincerely,

The P. R. Warren Company,

463–467 Commercial Street,

Boston, Mass., Jan. 18, 1906.

" Please send us immediately with bill — "    [Here followed the different specifications.]

The substance of the evidence admitted and the character of the evidence offered by the defendant and excluded by the judge are described in the opinion.

The portion of the charge of the judge in regard to the acceptance of the goods was as follows :

" You have very little evidence here as to what was the method of dealing with reference to the acceptance of goods of this kind, but supposing you find under all the facts in the case that it was an article which was not merchantable, that it was delivered to this company for the purpose of coating it, it is for you to say whether there has not been an acceptance by reason of the fact that it was delivered to this company for coating.

" Nothing appears showing that the defendant had any other method of accepting goods of this character except by allowing

his agent, the person engaged in coating the paper there, coating it and changing its form, changing its character by putting on this coating.

"Now, that evidence will be sufficient to justify you in finding that there was an acceptance, in the absence of any other evidence showing that there was a different method adopted by the defendant.

"Now, if there has been an acceptance of this paper, if the defendant did not see fit to send any one there to examine it before this new manufacture or this new process was applied to it, then he could not come in now and say, I wish to rescind this contract; I refuse to carry it out. If he has accepted it, that would not be fair to the seller, for a man to go on and deal with property as his own, changing its form, changing its character, dealing with it as his own, dealing with it through his agent, a man engaged in the manufacture, engaged in coating it, and then say, Now, I will throw it back on your hands; if a man is going to rescind a contract, it is his duty to place the seller back in the place where he was before and by coating a part of it and retaining a part of it — he could not retain part of it, coat part of it and return part of it; it is his duty to rescind all of it, if he is going to rescind a part and as you will find here, you may be justified in finding, upon all this evidence, that there was an acceptance upon the part of the defendant by allowing it to be dealt with in this way, under this process."

The jury returned a verdict for the plaintiff in the sum of $1,292.71; and the defendant alleged exceptions, including those which are considered and sustained in the opinion, the others having become immaterial.

*H. D. Crowley*, for the defendant.

*J. B. Studley*, for the plaintiff.

RUGG, J. This is an action of contract for goods sold and delivered, which, under the designation "Manila lined chip," were ordered of the plaintiff by the defendant by mail. The letter referred to accompanying specifications and gave shipping directions and a statement of the purpose of the defendant to have the roll stock coated. There were four sets of specifications, each giving quantity, size, weight and price,

324 WEST END MANUFACTURING CO. v. WARREN CO. [198

and describing the goods ordered only as "Manila lined chip."

There were interviews between representatives of the plaintiff and of the defendant several weeks before the order was sent, at which samples were shown and the grade of board was discussed. There was some evidence tending to show that the sale was by samples. Both parties to these conversations testified that the goods delivered were as good as the sample, and this was not contradicted. It was undisputed that there are two qualities of Manila lined chip, one, which does not bend at all, and the other, which bends more or less according to grades. The defendant asked its general manager whether he ordered the board for stiff boxes or folding boxes, offering to show that it was ordered for the specific purpose of making folding boxes, and that it was to have more folding qualities. This offer, technically construed, might mean the undisclosed purpose of the buyer, but its more natural import is that such purpose was disclosed to and assented to by the seller, and it seems to have been so understood by the judge, who ruled that that issue was not presented.

This being an action for the price of goods sold and delivered, it was open to the defendant under its general denial to show that the contract proved by the plaintiff was not the contract in fact made, in that goods of a different character were the subject of the sale. The offer raised this issue. *Rodman* v. *Guilford*, 112 Mass. 405.

It has not been argued that the written order of the defendant constituted such a contract in writing as to exclude all oral evidence respecting it. This position could not be maintained successfully. The order contains no reference to the samples, nor to the particular grade of Manila lined chip, which was desired. If these matters were agreed upon at a previous meeting between the representatives of the parties, for the purpose of applying to a future transaction, it was competent to show it, although the particular order was in writing. *Leavitt* v. *Fiberloid Co.* 196 Mass. 440. There was some evidence from the manufacturer of the goods that the specifications meant bending board intended for a collapsible box. If this be so, it was competent for the defendant to explain their terms, so

as to show that, to one familiar with them, there would be no mistake in their meaning. Yet with this fact in evidence, the judge prevented the inquiry whether the stock delivered was merchantable for folding boxes. If the order itself, when interpreted as it was understood by those familiar with the trade, meant goods to be used in making folding boxes, the defendant had a right to show that the goods delivered did not correspond with the description contained in the specification. The other issues raised did not blot out this one, which the defendant attempted to raise. Even though the goods were bought by sample, it may have been that the sample did not upon ordinary inspection disclose inadaptability for use in the manufacture of folding boxes, and that still, although corresponding to the sample, it was open to the defendant, according to the terms of that portion of the agreement contemporaneous with showing the samples, to require, under his contract, materials, which were suitable for a particular purpose. *Drummond* v. *Van Ingen*, 12 App. Cas. 284.

There was strong evidence tending to show an acceptance of the goods. But this is not conclusive, as it may be that the terms of the order, if explained, or the representations at the interviews when the samples were exhibited, would show an agreement as to the quality of the goods, which would survive an acceptance and give the defendant rights in this action, notwithstanding his conduct in having a part of the goods coated. If by the agreement of parties goods are to be manufactured or sold by a dealer for a particular purpose, there is an implied warranty or, speaking more accurately, an implied condition (*Randall* v. *Newson*, 2 Q. B. D. 102, *Leavitt* v. *Fiberloid Co.* 196 Mass. 440) that they are fit for that purpose. *Hight* v. *Bacon*, 126 Mass. 10. *Jones* v. *Just*, L. R. 3 Q. B. 197, 207. *Farrell* v. *Manhattan Market Co., ante,* 271. Mere knowledge of intent to make a particular use is not alone sufficient to raise a condition or warranty. Under the circumstances of this order and sale, what warranty was to be implied could be determined only by a full inquiry as to what was said when the samples were shown and the negotiations had, upon the basis of which the order was sent, and as to what was the meaning of words employed in the specifications. The ruling of the judge pre-

cluded the defendant from going into these matters. *Leavitt* v. *Fiberloid Co.* 196 Mass. 440.

There also was error in the ruling as to acceptance. Four different sets of specifications were sent by the plaintiff to the defendant, two of which related to stock in rolls, and two to stock in sheets. Each specification was complete in itself, as to size, quantity and price. The shipping directions requested that the sheets be loaded in the car first, and the rolls placed in the space between the doors, for the reason that the carload, containing both sheets and rolls, was to be shipped to the Whittemore Manufacturing Company at Holyoke, and the rolls there coated, and that arrangements were to be made to permit the car to remain on the siding of the Whittemore Manufacturing Company until the process of coating was completed and then to have the whole forwarded to the defendant in Boston without reloading the sheets. Under these circumstances it might have been understood by the parties that the contract was severable as to the different grades of chip. This was neither the sale of a single lot nor of several distinct articles for a single price, but it was a sale of different articles with a specified price for each. So far as appears, it may have been a mere coincidence that the price per ton for the stock described in each specification was the same. The contract made falls within the rule laid down in *Young & Conant Manuf. Co.* v. *Wakefield*, 121 Mass. 91, and *Raphael* v. *Reinstein*, 154 Mass. 178, instead of *Clark* v. *Baker*, 5 Met. 452. See *Holmes* v. *Gregg*, 66 N. H. 621. *Pierson* v. *Crooks*, 115 N. Y. 539. This being so, upon seasonable inspection after arrival at the defendant's place of business in Boston, it might reject the sheets if found not to comply with the contract, although by its course of dealing with the rolls in having them coated without inspection, it might be precluded from rejecting them. If it should be found respecting the rolls, that there was no such warranty of quality as survived acceptance, such dealing with them by the defendant might constitute an acceptance in the sense of recognition that they satisfied the terms of the contract. See *Perkins* v. *Bell*, [1893] 1 Q. B. 193. Before the delivery in Boston there had been no acceptance of the sheets, provided the contract was severable and not entire.

It is not necessary to discuss the requests for rulings presented by the defendant, for they may be immaterial upon a new trial. Many of them are disposed of by the principles stated in *Leavitt* v. *Fiberloid Co.* 196 Mass. 440.

*Exceptions sustained.*