STANDARD RICE COMPANY, INCORPORATED, *vs.* P. R. WARREN COMPANY.

Middlesex.    November 10, 1927. — January 9, 1928.

Present: BRALEY, CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Sale,* Warranty.    *Contract,* Performance and breach.

An action of contract by one engaged in packing and selling rice against a manufacturer of folding paper boxes upon an alleged implied warranty by the defendant that cardboard boxes which it had agreed to make for the plaintiff would be fit for the packing of rice therein by automatic machinery cannot be maintained in the absence of evidence that the plaintiff expressly or by implication made known to the defendant that the boxes were to be used in the packing of rice by automatic machinery, and where it appears merely that the boxes were to be manufactured according to a sample which had been furnished by the plaintiff and to a description in a memorandum of the sale, which made no reference to such specific use.

CONTRACT.    Writ in the First District Court of Eastern Middlesex dated April 15, 1924.

On removal to the Superior Court, the action was tried before *Burns*, J.    Material evidence is stated in the opinion. By order of the judge, a verdict for the defendant was ordered. The judge reported the action to this court for determination.

*A. A. Gillette*, (*R. H. Hopkins* with him,) for the plaintiff.

*J. L. Hurley*, for the defendant.

CARROLL, J.    In this action of contract for the breach of an implied warranty of fitness in the sale of cartons or boxes for packing rice, a verdict was directed for the defendant and the case was reported on the stipulation that, if the direction of a verdict was wrong, the plaintiff was to have judgment for $750.

The plaintiff's business was packing and selling rice. The defendant was a manufacturer of folding paper boxes. At the first interview of the agents of the parties, the defendant's agent was shown a sample carton from the stock the plaintiff was then using.    The defendant was asked to make a sketch and submit it to the plaintiff.    A sketch was made and submitted, and an order was given the defendant by the plaintiff.    A pencil memorandum was made by the defendant's agent.    This order was acknowledged in writing by letter of the defendant of October 23, 1922, reciting that the defendant was pleased to acknowledge order for "one pound Rice Cartons printed blue and yellow as per our sketches on .020 single manila lined chip size and make-up as per your sample submitted.    700,000 @ 3.98 per M. . . . 650,000 White House cartons," to be shipped to Houston, Texas, 50,000 stock cartons to be shipped to New York. The defendant sent proof sheets of the order, which were returned with the plaintiff's approval indorsed thereon. The printed matter on one of the side panels of this proof sheet contained the following: "'From Rice fields, milling by modern process, sanitary packing and positive identification, you are protected upon the definite authority of the Rice Miller.' 'Standard Rice Company, Inc. Mills at Houston, Texas.    Stuttgart, Ark. Crowley, La. Memphis, Tenn.'"    The sample given by the plaintiff to the defendant

had been lost or misplaced. The defendant's agent testified it was glued on the sides, and made up in the same general way as one of the exhibits, which was one of the cartons made for the plaintiff by the defendant on this order.

Twenty-five cartons out of the first run were sent to the plaintiff, who, by letter, acknowledged that they were satisfactory. Later, 636,600 cartons were sent to the plaintiff, who paid for them. At the plaintiff's mills cartons are packed by automatic packing machinery made by two different concerns. There was evidence that the cartons were defective "from the standpoint of use with either of these machines," because (1) approximately twenty per cent were either defectively glued or not glued at all on the side seams; (2) about five per cent were smaller on the bottom than on the top, which, it was contended, prevented the cartons from going "all the way up on the forming blocks without splitting at the sides"; and (3) the cardboard was not of uniform thickness.

The plaintiff's representative testified that automatic packing machinery was used almost universally by other packers "of the sort of goods that go in packages"; on cross-examination this statement was limited to packers of rice. He further testified that his knowledge was derived from dealing with the grocery trade; and that no one was sent by the plaintiff to examine the cartons before shipment. Certain correspondence also was in evidence.

The defendant's evidence was to the effect that it manufactured folding paper boxes for use with automatic packing machinery as well as for packing by hand; that at the time the order was given nothing was said as to the use of the cartons in automatic machinery; that the defendant did not know that automatic machinery was to be used until after the shipment was made and did not know the kind of machines in use by the plaintiff until the depositions were read; that these cartons were the first of the kind made by the defendant for packing rice; that several kinds of cardboard were shown the plaintiff when the order was given; that the sample was glued on the side but not on the top and bottom, and it was understood that the plaintiff would have to glue

the top and bottom before the carton could be used; and that the side seams were glued by machine. There was expert testimony as to the effect of damp weather on cardboard and glue.

Under the sales act, G. L. c. 106, § 17 (1), there is an implied warranty that the goods sold shall be reasonably fit for the purpose required when the buyer expressly or by implication makes known to the seller this particular purpose and it appears that the buyer relies on the seller's skill and judgment. To recover under this statute for a breach of an implied warranty of fitness, it was essential to show that the plaintiff expressly or by implication made known to the defendant the purpose for which the goods were required. The plaintiff's contention was that the cartons were not fitted for use in the packing of rice by automatic machinery. It was requisite for it to establish, that, either expressly or by necessary implication, it informed the defendant of this use. There was no evidence that the plaintiff informed the defendant that the cartons were to be used in packing rice by automatic machinery, nor are we able to find anything in the record to show that the plaintiff by implication made known this purpose. The plaintiff argues that from the size of the order it could be inferred that the plaintiff by implication made known the particular use to which the cartons were to be put. One answer to this argument is that it is not shown that the order was of extraordinary size. It is not to be inferred from the size of the order that the rice was to be packed by the automatic machinery operated by the plaintiff, or by any kind of automatic packing machinery.

*Parker* v. *S. G. Shaghalian & Co. Inc.* 244 Mass. 19, does not sustain the plaintiff's contention. There the candy was sold by a manufacturer to a wholesale candy dealer. Fitness for the purpose meant no more than merchantability; it did not mean adaptability for some special use. The Parker case is not an authority for the proposition that knowledge of the particular purpose the plaintiff was to make of the goods is to be inferred from the size of the order.

The plaintiff makes several contentions in support of such inference: it contends it is to be drawn from the facts that

the top and bottom flaps were to be glued by the plaintiff, that this operation was to be done by machine, that rice was sold on a narrow margin. These contentions are not sufficient to show that the plaintiff made known by necessary implication the special and particular purpose for which the paper boxes were to be used. The printing on the side of the panels of the proof sheet did not import that the rice was to be packed by automatic machines. We do not find anything in the correspondence upon which to base an inference that the defendant, when the contract was made, had knowledge that the cartons were to be used in packing by automatic machines. *West End Manuf. Co.* v. *P. R. Warren Co.* 198 Mass. 320, 325. Furthermore, it is not shown that the plaintiff relied on the defendant's skill and judgment to manufacture boxes for this peculiar, special kind of packing. It did rely upon the defendant to manufacture boxes according to the sample furnished and to the description in the written memorandum of sale; but this was the extent of the reliance. *Cunningham* v. *Hall*, 4 Allen, 268, 273. *Day* v. *Mapes-Reeve Construction Co.* 174 Mass. 412. See *Leavitt* v. *Fiberloid Co.* 196 Mass. 440, 451. The letter of acceptance introduced by the plaintiff and the pencil memorandum made when the order was given, made no reference to any particular use; they merely stated that the boxes were to be made according to sample furnished by the plaintiff.

*Manchester Liners, Ltd.* v. *Rea, Ltd.* [1922] 2 A. C. 74, on which the plaintiff relies, is to be distinguished. The defendant had a dockside office at Manchester, where it conducted a large business. Natural draught steamships known as the Manchester type were in use. It was to be inferred from all the facts that the defendant was familiar with this type of steamship, that the vessel in question was of this kind, and that the defendant knew or had at least reasonable cause to know that the coal was to be used in natural draught furnaces of the Manchester type. There was no evidence of this character in the case at bar.

The evidence that some of the cartons were defectively glued was admitted to show that the cartons "were defective from the standpoint of use with either of these machines,"

not to show that they were for this reason inferior to the sample; and as the special use of the cartons was not made known and the plaintiff did not rely on the defendant's skill to manufacture articles for a special use, this evidence does not help the plaintiff.

A letter of the plaintiff was excluded. Assuming it was admissible, the plaintiff was not harmed by its exclusion; the defendant's letter in answer to the plaintiff's letter was admitted, and the exclusion of the plaintiff's letter did not affect the result. We do not understand that the plaintiff now contends that it was prejudiced by the ruling.

*Verdict for defendant to stand.*
*Judgment to be entered for the defendant.*