## MAURICE C. SMITH CO., Inc. v. FISHER PLASTICS CORPORATION.

### Civ. No. 6399.

District Court, D. Massachusetts.

March 9, 1948.

Milton C. Wasby, Mintz, Levin & Cohn and Joseph B. Abrams, all of Boston, Mass., for plaintiff.

Philip J. Murphy, of Worcester, Mass., for John D. O'Reilly, Trustee in Reorganization of Fisher Plastics Corporation.

SWEENEY, District Judge.

In this action the plaintiff seeks to recover damages as the result of an alleged breach of either an express warranty or an implied warranty, or both. The defendant denies that any warranty attached to the sale of its products to the plaintiff.

### Findings of Fact

The plaintiff is a Rhode Island corporation engaged in the manufacture of boots and shoes. Among its products it had, prior to 1946, manufactured a type of stadium boot known as the "Warmeze" boot. In 1946 the plaintiff decided to make a boot of this type but with the outer surface made of a plastic rather than leather or rubber. Plastic had been used previously in footwear but, so far as is known, not in this type of boot. It had been previously restricted to imitating patent leather and to ornamental parts of shoes.

The plaintiff communicated its desire to one Charles Stoddard, a jobber of shoe and leather supplies, who undertook to secure the plastic sheeting for the plaintiff. He got in touch with the defendant some time in July of 1946, and placed the order for the vinyl resin. I find that, at the time he ordered the plastic from the defendant, Stoddard did not tell the defendant of the use to which he intended to put the plastic, or that it was even going into boots of the stadium type. I find specifically that the first time the defendant knew that its plastic was being used in stadium boots was in December of 1946, which was long after the boots had been manufactured and after they had proved unsatisfactory. The first week of August, 1946, which was prior to the delivery of the defendant's goods to the plaintiff, a Mr. Wiley, an officer of the plaintiff corporation, had a telephone conversation with one of the defendant's salesmen, during which Wiley stated that he wanted to know the temperature ranges which the vinyl resin would withstand. The salesman assured him orally that it would withstand any temperature between 50° below zero, Fahrenheit, and 250°, Fah-

renheit. This statement was confirmed in a letter to Wiley under date of August 29, 1946. During the conversation, and in the letter, no reference was made by the plaintiff of the end use to which it intended to put the plastic.

On August 10 the vinyl resin was delivered to the plaintiff, and it commenced to manufacture approximately 4,500 pairs of boots, using the plastic as the outer covering. I find that at no time did the plaintiff, by experimentation or otherwise, attempt to ascertain the suitability of the vinyl resin for use in footwear in extreme cold. The boots were manufactured and sold throughout the United States, principally in the northern area and in Alaska. They proved unsatisfactory because the outer covering of the boot, which was the plastic composition, cracked on exposure to cold temperatures. The plaintiff was compelled to take back all of the boots which it had manufactured. They have no present value today other than the salvage value of the materials in them.

■ This sale is governed by the Uniform Sales Act, enacted in Massachusetts as General Laws (Ter.Ed.), Chapter 106, Section 17(1). This section provides that there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods sold unless the buyer "* * * expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment * * *." This plaintiff did not disclose to the defendant the particular purpose for which it wanted the goods and, while the defendant undoubtedly knew that the plaintiff was a manufacturer of boots and shoes, it had as much right to assume that the plastic would be used on dress shoes as not. Lack of disclosure as to the end use of the product negatives any implied warranty of fitness for a particular purpose under the statute. Standard Rice Company, Inc. v. P. R. Warren Company, 262 Mass. 261, 159 N.E. 508; Barrett Co. et al. v. Panther Rubber Mfg. Co., 1 Cir., 24 F.2d 329, 335.

■ The plaintiff alleges the breach of an express warranty based upon the representation by the defendant's salesman that the goods would withstand temperatures as low as -50° F. The difficulty with this claim is that the representation was made after title to the goods had passed to the plaintiff, and could not have been an inducing representation. In the absence of an intent on the part of these contracting parties to have title pass at the time of payment or at the time of delivery, it actually passed in July at the time when the contract was made. This is in conformity with Section 21(1) of the Uniform Sales Act, General Laws of Massachusetts (Ter.Ed.), Chapter 106, Section 21(1). I find that the plaintiff has not sustained the burden of showing that the representations as to temperature were made prior to the time when the contract of sale was entered into. Section 14 of the Uniform Sales Act, General Laws of Massachusetts (Ter.Ed.) Chapter 106, Section 14, defines a warranty as an "* * * affirmation of fact * * * relating to the goods * * * if the natural tendency of such affirmation * * * is to induce the buyer to purchase the goods, and if he purchases the goods relying thereon." A statement of fact made after the title to the goods has passed to the buyer cannot be construed as a warranty relating back to the time of the sale.

The plaintiff has failed to sustain the burden of proving that the representations as to temperature were the inducing cause of the sale, or that the defendant was aware at any time during the negotiations of the purpose for which the plaintiff was buying the plastic.

### Conclusions of Law

On the basis of the foregoing I must conclude and rule that there were no warranties attached to the sale of the defendant's product to the plaintiff and that, consequently, there has been no breach of a warranty by the defendant.

Judgment is to be entered for the defendant in accordance with the above.