STAR FUSE COMPANY, INC. *vs.* SAMUEL W. PRUSSIAN.

Middlesex.   November 15, 16, 1923. — February 28, 1924.

Present: RUGG, C.J., CROSBY, PIERCE, & CARROLL, JJ.

*Contract*, In writing, Construction, Performance and breach, Implied. *Sale. Evidence*, Extrinsic affecting writing, Presumptions and burden of proof. *Practice, Civil*, Ordering verdict. *Damages*, For breach of contract.

At the trial of an action for the breach of an express contract, it appeared that the defendant had drafted, signed and delivered to the plaintiff a contract in writing which the plaintiff had accepted; that the contract provided for the manufacture by the plaintiff for the defendant of an article of merchandise called " Guaranty Spark Intensifires; " that they were to be " Like Sample submitted excepting to be ½ inch shorter; " that the price was set; that delivery was to be " F.O.B. Freight allowed Camb.; " and it was provided, " Deliveries to start in quantities of not less than 5000 week beginning June 7th, 1920." The defendant offered evidence of conversations previous to the execution of the contract as bearing upon the question, whether the contract, if any, was for delivery at a fixed time, or within a reasonable time, and upon the question of what was a reasonable time for the performance of the contract; and contended that the evidence was admissible as affirmations of facts or promises by the plaintiff, the natural tendency of which was to induce the defendant to purchase, which affirmations or promises the defendant was entitled at his election to treat as warranties or as conditions to his obligation to perform his promise to accept and pay for the goods within the provisions of G. L. c. 106, §§ 13, 14. The evidence was excluded. *Held*, that the evidence properly was excluded, the accepted order containing in its written words every essential element to a valid and enforceable contract, and the testimony offered not referring to any collateral, rescinding or modifying agreement.

One count in a declaration in an action of contract was upon an account annexed for labor and materials furnished by the plaintiff to the defendant. At the trial, the evidence tended to show that the plaintiff performed labor and furnished materials for the manufacture of an article to be delivered to the defendant. The defendant refused to accept delivery of any of the manufactured articles because of lateness of manufacture, and there was no delivery. *Held*, that a verdict should be ordered for the defendant upon the account annexed.

A second count in the action above described was for breach of a contract in writing by the defendant to accept and pay for a specified article to be manufactured by the plaintiff and to be delivered to the defendant at a specified time. At the trial of the action, there was testimony

tending to show that by agreement of the parties the time for the delivery of the manufactured article was extended to a definite date; that the plaintiff did not perform the contract in any respect within the extended time, and that the defendant cancelled the contract because of nonperformance by the plaintiff within the extended time limit. There was also evidence tending to show that by agreements and conduct of the parties the absolute time for performance by the plaintiff had been changed to a reasonable time in all the circumstances and that such reasonable time had not expired at the time when the defendant refused to be bound further by the contract. The trial judge ordered a verdict for the plaintiff on the question of liability. *Held*, that the ordering of the verdict was erroneous, the question of the plaintiff's right against the defendant depending on whether a reasonable time for performance had been substituted for the definite time fixed by the contract and whether such reasonable time had expired, and being one of fact for the jury and not one of law for the court.

The action above described was begun after the time when delivery should have been completed under the contract. At the trial, the defendant asked the trial judge to charge the jury that, if the plaintiff was entitled to recover, it was " not necessarily entitled to recover the full amount of profits that it would have made if the contract had been fully performed." The ruling was refused. The judge charged the jury, in substance, that the plaintiff was entitled to recover reasonable profits which it would have made if it had been permitted to perform its contract, if it would have made any profit. *Held*, that the rulings of the judge on the question of damages were proper.

TORT, with a declaration as amended in two counts. The first count of the declaration was upon an account annexed containing nine items, the first eight being for stock, materials and labor, and amounting to $2,243.77 The remaining items were as follows:

Contract price, $115.00 per thousand
Total expense,    71.45 per thousand

Net profit,        $43.55 per thousand or
Total profit for entire order,                    $4,355.00

                                                 $6,598.77

The second count was for a breach of the express contract described in the opinion. Writ dated December 10, 1920.

In the Superior Court, the action was tried before *Keating*, J. Material evidence is described in the opinion. At the close of the evidence, the defendant asked for the following rulings:

" 1. On all the evidence the plaintiff is not entitled to recover on count 1 of its declaration.

" 2. On all the evidence the plaintiff is not entitled to recover on count 2 of its declaration."

" 19. If the plaintiff is entitled to recover from the defendant it is not necessarily entitled to recover the full amount of profits that it would have made if the contract had been fully performed."

The rulings were refused. The trial judge ordered a verdict for the plaintiff on the subject of liability and left to the jury the question of damages, on that subject charging them as follows:

" In an action of this kind, where there has been a breach of contract, the plaintiff is entitled to recover the loss resulting directly from the breach of contract, in the ordinary course of events, and he is also entitled to recover reasonable profits which he would have made if he had been permitted to perform the contract, if he would have made any profit. . . . If the plaintiff would have made a profit, had he been permitted to fulfil his contract, he will be entitled to recover such profit. . . .

" Now, the claim of the defendant is that, as I understand it, you ought not to find that as large a sum was incurred for expenditures by the plaintiff as the plaintiff claims, and the claim of the defendant is, in reference to profits, that the plaintiff could not have made any profits, that even if he had carried out his part of the contract, he would find that he had not made any profits, that the cost of making the spark intensifier would be eleven and one-half cents, and that the plaintiff was only to receive eleven and one-half cents under the contract, and so he would have made no profit if he had carried out the contract. . . .

" You have heard the testimony introduced by both parties on that subject. . . . So, taking the evidence and determining what part of the evidence is to be accepted by you, you will determine this question, — whether, if the plaintiff were permitted to carry out the contract, it would have made any profit, and if so, how much that profit would be. And, if you find that if the plaintiff were permitted to carry out the contract, it would have made a profit, and you have determined how much that profit would be, you will allow that sum represented as profit, as part of the damage.

" If you should conclude that even if the plaintiff were permitted to carry out the contract, he would not have made any profit, then you will allow the plaintiff nothing because of the profit, and the only sum that you will allow the plaintiff, if you come to the conclusion that it would have made no profit, will be such sum as you find the plaintiff is entitled to receive because of expenditures incurred."

In answer to special questions, the jury found as follows: To the question, " What sum of money is the plaintiff entitled to recover for expenditures incurred? " the jury answered $2,370.13; and to the question, " What sum of money, if any, is the plaintiff entitled to recover as profits?" the jury answered $4,269.14. The jury found for the plaintiff in the sum of $6,639.27. The defendant alleged exceptions.

*F. W. Campbell*, for the defendant.

*J. J. Podell* of New York, (*T. L. Walsh* with him,) for the plaintiff.

PIERCE, J. This is an action of contract in two counts, one being on an account annexed and the other for an alleged breach of an alleged contract.

The plaintiff (a New York corporation acting through its president, one Podell, who was also the sole owner and the only party interested financially in the corporation), at Cambridge, Massachusetts, after some conversation on April 27, 1920, made a contract with the defendant (doing business as an individual under the name of Guaranty Motors Company), to manufacture Guaranty Spark Intensifires, intended to be attached to the spark plug on automobile engines to intensify the spark, for the sale of which accessory the defendant was carrying on an extensive advertising campaign. The contract was in writing. It was drafted, signed and delivered by the defendant and was received and accepted by the plaintiff. The contract calls for the shipment of one hundred thousand Intensifires " Like Sample submitted excepting to be ½ inch shorter; " the price to be eleven and one half cents each; " F. O. B. Freight allowed Camb." " Deliveries to start in quantities of not less than 5000 week beginning June 7th, 1920."

When Podell left Cambridge he went to Providence and there placed an order for two hundred thousand terminals, that is, two terminals for each of the one hundred thousand Intensifires ordered. In New York, on April 28, 1920, he placed orders for all material necessary to be used to make the Intensifires in accordance with the requirements of the contract and the sample.

On April 28, 1920, in New York the plaintiff wrote the defendant a letter acknowledging with thanks the order of April 27 and stating among other things, " We have placed orders for all the material necessary for this job, and if we do not meet with any disappointment, we will certainly keep our promise in making deliveries." On May 1 the defendant wrote the plaintiff among other things, " we are pleased to note that you have placed orders for all material on our order. We must, however, call your attention to the fact that deliveries according to schedule must be insisted upon."

On May 4 the defendant wrote the plaintiff, " With reference to our order # 4–27–1, we request that you arrange to use a 10/32 thread screw in the production of the Intensifires and change the Gap not to exceed 1/16th inches between points and slightly less if possible." On May 5, 1920, the plaintiff in reply stated: " We can readily change the Gap, as we have not as yet cut up the wire, however, it would be out of the question at present, to change the screw, for the reason that this change would not only affect the screw, but also the Fibre and the finger Nuts, which we have already contracted for. . . . Please give your decision on this matter, and if you find it absolutely necessary to change the screw, you will have to allow us more time, so we can get in touch with other concerns as regards changes on other parts." On May 6 the defendant wrote, and followed the letter by a telegram on May 7, " Change. in thread screw absolutely necessary on account of making. it inter-changeable for all spark plug threads. . . . We trust however, that this change in the specifications will not set back your deliveries to any extent." ; ...

On May 6 the plaintiff wrote the defendant " . . . It is

unfortunate that you should find this change necessary, as we had great difficulty in obtaining the 6/32 screws.   We do not know how much difficulty we will encounter in obtaining the 10/32 screws, but we will try our best to please you;" and on May 10 ". . . Since we have received your request for a change in screw we have communicated with every large screw manufacturing concern in the Country, and they either refuse to quote on a 10/32 screw, or state deliveries of three months to a year. . . . In our telegram of to-day we made a suggestion to you to use the original screw at one terminal and 3/16 hole at the other terminal — this would practically take care of any Spark Plug manufactured, and we trust that you will consent to the same."   On May 11 the defendant wrote the plaintiff " It will be impossible for us to follow your suggestion to use the original screw in one Terminal and a 3/16 hole in the other Terminal. . . . We are going to ask you to incorporate one other additional change which will be final and as early as possible we will forward to you a sample in order that you may revise your specifications."

There was evidence that between May 11 and May 15 one Wright, an employee of the defendant, came to the office of the plaintiff in New York bringing with him a new design of the Intensifire, which he told Podell the defendant wanted the plaintiff to make instead of the original design; that Podell told Wright it would be impossible for him to discuss making it for the defendant until Podell had consulted with contractors with whom he had placed contracts for brass terminals.   On May 15 the defendant wrote the plaintiff " Confirming our recent conversation, please be advised that the sample intensifire which the writer left you is the design which must be followed on our order. . . . We are awaiting word from you as to just where you stand regarding production and delivery and will greatly appreciate any information which you may give us."

On May 15 the plaintiff wrote the defendant " . . . The manufacturer therefor asks three-quarters of a cent more for the making of this new lug.   This would make the article cost you 12¼¢ each on a quantity of 100,000."   " Brass

mill accepts cancellation old order if new order placed promptly." May 17, 1920, the defendant wrote the plaintiff, " We have your letter of May 15, quoting price of 12¼¢ each. . . . Unless you see your way clear to furnish the Intensifire made up in the new style at 11½¢ each, we request that you proceed immediately on production of 100,000 like sample of the first style which you submitted to us by mail, using the 10/32 thread screw and nut, with gap not to exceed 1/16″ between points. Deliveries to start in quantities of not less than 5000 per week, beginning June 7th, 1920. Price to be 11½¢ each."

On May 18, 1920, the plaintiff replied: " Regarding delivery, we will do our best to rush this along. We are now in a position to obtain every item necessary for this article, and are not losing any time. However, you must realize that the changes you made, delayed us for two weeks, and you can hardly expect delivery by June 7th, as only upon receipt of your letter to-day, we are ordering the 10/32 screws and nuts. Nevertheless, as stated above, we will do our level best to give you shipments at an early date, as we are also anxious to get started on this order." On May 19 the defendant wrote the plaintiff: " It is very important that we receive deliveries from you during the week beginning June 7th, and any arrangement other than this will not be acceptable. . . . Naturally we would greatly prefer your proceeding with our order in the new style, like sample submitted to you by our Mr. Wright, but inasmuch as you do not appear willing to give us the new style at the price of 11½¢ we feel that you should keep within the time limit specified for deliveries on the old style." On May 21 the plaintiff in reply wrote " We purposely sublet some of this work, although it meant a loss of money to us, so that we could have more time for ourselves to do the most important work on it, and we selected Concerns that could give us definite delivery dates although their figures were higher than the other Concerns. We do not make any rash promises, but we feel certain that you will have deliveries in June."

On June 3 the defendant wrote the plaintiff: " We are greatly in need of Intensifires and wish to inquire whether

or not you can give us a shipping date on installment of the lot being made by you. We understand you will make shipment some time next week and will greatly appreciate knowing the date on which you expect to do so." June 4 the plaintiff replied: " As regards delivery of the Intensifires, we expect to make you a shipment the latter part of June. We would have had the first shipment ready for you on June 7th; however, your delaying us two weeks, put us back." June 7, the defendant wrote the plaintiff: " We are greatly in need of the Intensifires and must have some during this week; " and on June 14, sent the following telegram: " Have you made shipment of Intensifiers Urgent need Wire answer." On the same day, in reply to the telegram, the plaintiff wrote: " we expect to make shipment to you the latter part of this month; " and on June 18, " We have everything now ready to go ahead with your order, except the terminals, and these are promised to us by the middle of next week."

On June 23 the defendant sent the plaintiff the following letter: " Our original order placed with you called for delivery the week beginning June 7th. With a slight change made by us, you required one week additional to make deliveries to us, which we granted you. According to the last arrangement, deliveries should have been started the week beginning June 14th, and up to the present time, we have had no shipments from you. Unless we receive same at once, we shall consider ourselves free from any liability on this order." The plaintiff replied on June 25: ". . . With respect thereto [the communication of June 23], permit us to state that your demand for shipment at once, is decidedly unreasonable and decidedly unfair to us. The situation, which we regret far more than you do, was created entirely by yourselves. If you had left us alone on the original order placed with us, we would have been in a position to ship and deliver everything on time." The letter then went on to state in detail the acts of the defendant which as the plaintiff contended made it impossible that deliveries of the Intensifires should start on the day named in the contract.

June 28 the defendant wrote the plaintiff in reply to the letter of June 25, " we do not agree to your statement of facts. According to our original order, you were to start deliveries the week beginning June 14th. You state that we have delayed you three weeks, which as a matter of fact we do not agree with you that we delayed you that long, and even though the delay was such as you speak of, it is now time for deliveries to come along — taking your own statement for it. . . . We are again advising you that we shall expect shipment for this week end, and, in the event, that you fail to do so, we shall not accept any shipments should the first shipment not be in our hands by that time at least 10,000 intensifires."

July 1 Podell saw the defendant at Cambridge; he had with him a sample of the Intensifires, and said to the defendant " I am ready now to go ahead and make them up for you; I have practically everything, and these terminals are being manufactured now . . . the dies are all ready and we can go ahead and make them up and give them — within three or four days we will have a few thousand of them; " the defendant replied " No, I don't want them any more." No evidence was offered that the plaintiff tendered delivery of any Intensifires during the week of June 28 or offered so to do, other than is inferable from Podell's declaration while at Cambridge, ". . . we can go ahead and make them up and give them — within three or four days we will have a few thousand of them."

During the trial the defendant offered evidence of the conversation at Cambridge immediately before the execution of the contract dated April 27, and argues that such evidence was legally competent upon the question whether the contract, if any, was for delivery at a fixed time, or a reasonable time, upon the question of what was a reasonable time for the performance of the contract and as affirmations of facts or promises by the seller, the natural tendency of which was to induce the buyer to purchase, which affirmations or promises the buyer was entitled at his election to treat as warranties or as conditions to his obligation to perform his promise to accept and pay for the goods within the provi-

sions of G. L. c. 106, §§ 13, 14.   The accepted order contained in its written words every essential element to a valid and enforceable contract and the offered testimony did not relate to any collateral and reversible agreement.   The ruling of the trial judge excluding the evidence was right. *Goldenberg* v. *Taglino,* 218 Mass. 357, 359.   *Glackin* v. *Bennett,* 226 Mass. 316, 319, 320.

The defendant at the close of the evidence requested the trial judge to rule that the plaintiff is not entitled to recover on count one of its declaration, that is, on the account annexed.   G. L. c. 231, § 7, cl. 9, reads: "A count on an account annexed may be used in an action of contract if one or more items are claimed any of which would be correctly described by any one of the common counts according to the natural import of its terms."   The request should have been granted; the contract was for the purchase and sale of a hundred thousand completed instrumentalities, at an agreed price for each one of them, to be manufactured by the plaintiff of its own material by its own labor and its own methods and processes.   The labor of the plaintiff was performed on its own material for the purpose of affecting a sale of a completed thing and was not furnished the defendant.   The defendant has never received the Intensifires or any material or labor; so far as any article has been completed the title and possession still remain in the plaintiff; and the defendant has never received or appropriated either the material or the labor of the plaintiff.   *Morse* v. *Sherman,* 106 Mass. 430.   G. L. c. 106, § 52.   The exception is sustained.

The request of the defendant that on all the evidence the plaintiff is not entitled to recover could not have been given: there was substantial evidence in support of the allegations of this count.

The exception taken to the order of the trial judge directing a verdict for the plaintiff must be sustained.   The evidence warranted a finding that the plaintiff contracted to make deliveries during the week of June 7; that the time was extended to call for deliveries during the week of June 14 and again during the week of June 28; that the plaintiff

did not perform the contract in any respect within the time limits of the contract as extended by the defendant; and that the defendant cancelled the contract because of nonperformance within the time limits of the contract. On the other hand there was evidence to warrant a finding that the time of performance by the plaintiff had, by the acts of the defendant, been changed from an absolute point of time to a reasonable time to be determined by the jury in consideration of all the evidence. G. L. c. 106, § 32, cl. 2. Should the jury find that the plaintiff was in default when the defendant wrote and the plaintiff received the letter of June 28, if the jury find such letter was received by the plaintiff, it is manifest the contract was rightly determined and the plaintiff could have no right of action based upon the defendant's then repudiation of the contract or upon his refusal to deal further with the plaintiff at the interview of July 1. It is equally plain that the letter of June 28 could not put the plaintiff in default if the agreement as to time had been abrogated and a reasonable time of performance had not expired with the end of the week of June 28. Without further consideration of the evidence, enough has been said to show that the issue of the plaintiff's right against the defendant was a question of fact for the jury and not one of law for the court.

The ruling of the trial judge in regard to measure of damages was right. G. L. c. 106, § 53, cl. 4, reads: " If, while labor or expense of material amount are necessary on the part of the seller to enable him to fulfil his obligations under the contract to sell or the sale, the buyer repudiates the contract or the sale, or notifies the seller to proceed no further therewith, the buyer shall be liable to the seller for no greater damages than the seller would have suffered if he did nothing toward carrying out the contract or the sale after receiving notice of the buyer's repudiation or countermand. The profit which the seller would have made if the contract or the sale had been fully performed shall be considered in estimating such damages." In this Commonwealth the renunciation or repudiation of a contract before the day of performance ordinarily is not such a breach of

obligation as gives an immediate right of action, and damages are to be determined as of the day when there should be performance and not as of the day of the repudiation of the contract.   *Tirrell* v. *Anderson,* 244 Mass. 200.   The case of *Home Pattern Co.* v. *W. W. Mertz Co.* 86 Conn. 494, relied upon by the defendant, contemplates the right to maintain an immediate action for damages where there has been an anticipatory repudiation of a contract; and decides that the words of the statute quoted in reference to profits permit a jury as best they may to estimate what the future situation may be in reference to profits when an action is brought for a breach and before the time of performance arrives.   The statute is not applicable where an action is brought after the time of performance has arrived and where it is possible for a jury to determine with accuracy the amount of profit the seller would have made.   Williston on Sales, § 587.   *United States* v. *Behan,* 110 U. S. 338.   *Meyer Brothers Drug Co.* v. *McKinney,* 137 App. Div. (N. Y.) 541; affirmed 203 N. Y. 533.   *Liberman* v. *Templar Motor Co.* 236 N. Y. 139, 149.

*Exceptions sustained.*