## GARFIELD & PROCTOR COAL COMPANY *vs.* NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Suffolk.    January 14, 28, 1924. — April 10, 1924.

Present: RUGG, C.J., DECOURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Damages,* For breach of contract.    *Foreign Law.    Sale.    Contract,* Performance and breach.    *Practice, Civil,* Requests, rulings and instructions, Exceptions.

At the trial of an action upon a contract in writing for the sale of coal by the plaintiff to the defendant, it appeared that the contract was signed by the plaintiff in New York and by the defendant in Connecticut, that the coal was to be delivered on board cars in Pennsylvania, and that shipments were to be made in New Jersey and New York.    It was agreed that the uniform sales act was in force in all of these States.    The statutes of all of these States were in evidence, but there were no decisions of their highest courts.    *Held,* that the interpretation of the uniform sales act was a matter of law for the court.

At the trial of an action for the breach of a contract in writing for sale of coal by the plaintiff to the defendant, there was evidence tending to show that the contract was performed by the plaintiff, but that the defendant, without justification, ordered the plaintiff to cease further shipment.    There also was evidence tending to show that the contract price of the coal per ton was $4.25, that the cost of producing it per ton was $3.10, and that, at the time of the breach of the contract by the defendant, the market price per ton was $2.    *Held,* that

(1) The plaintiff was entitled to the profits of the contract;

(2) The assessment of damages was governed by G. L. c. 106, § 53, (3), and, there being an available market for the coal, the plaintiff was entitled to recover the difference between the price called for in the contract and the market or current price at the time of the breach of the contract;

(3) The plaintiff not being called on to manufacture for the defendant an article which had no true market value, subsection 4 of G. L. c. 106, § 53, was not applicable;

(4) A verdict could not be ordered for the defendant.

An exception to a refusal by a trial judge to grant requests by the defendant for rulings on subjects other than damages must be overruled by reason of the provisions of Rule 45 of the Superior Court (1923) where it does not appear that an exception was taken to such refusal before the charge to the jury, and where it further appears that the trial judge was given to understand that the only question reserved by the parties before the charge related to damages.

At the trial of an action for breach by the defendant of a contract in writing whereby the defendant agreed to purchase coal from the plain-

tiff to be shipped in monthly instalments for a period covering eight months, where there was evidence that, after six months of shipments, the defendant without warrant directed the plaintiff to cease further shipments, the defendant contended that the action was begun prematurely. It appeared that the action was not brought until after the time for full performance had passed. *Held,* that the contention of the defendant was groundless; and *it was stated,* that the plaintiff need not have waited until the passage of the full term of the contract before bringing his action, since the alleged breach was material and went to the essence of the contract.

CONTRACT for breach of an agreement in writing, described in the opinion, for the sale by the plaintiff to the defendant of " R/M [run of mine] bituminous " coal. Writ dated May 18, 1921.

In the Superior Court, the action was tried before *Quinn,* J. Material portions of the contract and evidence at the trial are described in the opinion. At the conclusion of the evidence, the defendant moved that a verdict be entered in its behalf. The motion was denied, subject to the defendant's exception.

The defendant also filed forty requests for rulings. The plaintiff asked for the following rulings:

" 3. The measure of damages applicable in this case is the difference between the contract price and the market price.

" 4. The rule of damages applicable in this case is defined in the uniform sales act. (The section of the uniform sales act applicable appears in G. L. c. 106, § 53, and particularly subsection 3.) "

" 6. The cost of production to the Wendall Coal Mining Company, the owner of the mines from which the Garfield & Proctor Coal Company contracted to supply the coal, is not an element to be taken into consideration in determining the damages to which the plaintiff is entitled in this case."

The record states: " In order to avoid the possibility of a retrial, it was agreed that the court should instruct the jury that if they should find for the plaintiff, they should bring in two findings, one based on the theory that the plaintiff's damages were the difference between the contract price of $4.25 and the cost of production of $3.10; the other finding on the theory that the plaintiff might be entitled to the difference between the contract price of $4.25 and the

spot market price of $2.00." The record, after reciting the findings of the jury as described in the opinion, further states: "The court then directed a verdict in the amount of $12,606.58, and saved the plaintiff's exceptions to the court's rulings and refusals to rule upon the matter of damages."

In a colloquy with the defendant's counsel as to whether his exceptions were saved as to requests for rulings on subjects other than the question of damages, the trial judge stated, "Yet I am strongly of the belief that I reserved simply for exceptions any questions arising upon the measure of damages. . . . I feel rather firm that an exception ought not to be saved to requests apart from the question of damages, which might have been called to my attention specifically before the jury retired and to which I could have alluded. . . . Let it be noted that the court is firm in his recollection that the counsel in his address to the jury stated that the issue [of fact] in this case was whether or not the coal was well prepared. . . . Such exceptions as the court above thinks are saved may be noted."

The trial judge reported the action for determination by this court.

*C. F. Lovejoy*, for the plaintiff.

*A. W. Blackman*, for the defendant.

CARROLL, J. In July, 1920, the parties entered into an agreement by which the plaintiff was to sell and the defendant to buy three carloads daily of " R/M bituminous " coal from July 21, 1920, to March 31, 1921. The price per ton was $3.85 f. o. b. cars at the mine, subject to variations in rates of wages of mine labor. The defendant was to furnish cars for loading. The plaintiff was to ship the coal to places designated by the buyer, " shipments . . . [to] be made as nearly as practicable in equal monthly quantities," payments to be made not later than the twenty-fifth day of each month " for coal received during the preceding month." On January 11, 1921, the defendant wrote the plaintiff instructing it to " cease further shipments." No coal was shipped after January 14, the defendant supplying no cars after that date. There was evidence that all the coal shipped complied with the contract. There also was

evidence upon which the jury could have found that the defendant was justified in terminating the contract. After the defendant's refusal to receive any coal under the contract, the plaintiff requested the defendant to reconsider its action and urged it to continue with the contract. The plaintiff continued production selling at the market price to persons other than the defendant.

The cost of producing coal from January 15, 1921, to April 1, 1921, was $3.10 per ton. The market price was $2 per ton. It was agreed that the contract price during that time was $4.25 per ton; that the contents of a car was fifty tons. There was evidence that sixty-five working days remained; that the plaintiff was ready and able to ship three cars a day to the defendant during this period. It was agreed that the cost of shutting down the mine would have been $2,500.

The action was in contract, for the breach of the agreement; the jury finding for the plaintiff in the sum of $12,-606.58 if the plaintiff should be limited to the difference between the contract price and the cost of production, and in the sum of $24,665.06 if the plaintiff could recover the difference between the contract price and the market price. A verdict was directed in the sum of $12,606.58, the plaintiff excepting to the refusal to rule that the measure of damages was the difference between the contract price and the market price. The case was then reported to this court. It did not appear that the item of $2,500, the cost of shutting down the mine, entered into either finding of the jury.

By the contract, which was signed by the plaintiff in New York and by the defendant in Connecticut, coal was to be delivered on cars in Pennsylvania, and shipments were to be made in New Jersey and New York. It was agreed that the uniform sales act was in force in all these States; and the statutes of these States were in evidence. No decisions of these States were introduced in evidence. The interpretation of the statute is therefore a matter of law for the court. See *Wylie* v. *Cotter*, 170 Mass. 356, 357; *Electric Welding Co. Ltd.* v. *Prince*, 200 Mass. 386, 390. G. L. c. 106, § 53, giving the seller a remedy in damages if the

buyer refuses to take the goods, corresponds to the foreign laws in evidence, namely, Penn. Laws 1915, c. 241, § 64. New Jersey Laws 1907, c. 132, § 64. New York Laws 1911, c. 571, § 145. Conn. Laws 1907, c. 212, § 64. Subsection (2) § 53, G. L. c. 106, enacts that the measure of damages " shall be the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract." Subsection 3 provides, where there is an available market for the goods in question, that the rule of damages, in the absence of " special circumstances showing proximate damage of a greater amount," is the difference between the contract price and market price " at the time when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."

The plaintiff was entitled to the profits of the contract. Subsection 3 of the sales act governs the case. There was an available market for the coal, and the plaintiff could recover the difference between the price called for in the contract and the market or current price at the time of the breach of the contract. *Moffat* v. *Davitt*, 200 Mass. 452. *Barrie* v. *Quinby*, 206 Mass. 259, 267, 268. *Hall* v. *Paine*, 224 Mass. 62, 63, 64.

Subsection 4 of the statute, providing that if the buyer repudiates the contract, while labor or expense is necessary to the seller to fulfil contract, the buyer shall be liable " for no greater damages than the seller would have suffered if he did nothing toward carrying out the contract . . . after receiving notice of the buyer's repudiation," is not applicable to the case at bar. The commodity to be sold by the plaintiff to the defendant under the contract was a staple product for which there was an available and open market. The plaintiff was not called on to manufacture an article for the defendant which had no true market value, and where he might be called upon to mitigate the damages. See *Hinckley* v. *Pittsburgh Bessemer Steel Co.* 121 U. S. 264; *W. R. Grace & Co.* v. *Nagle*, 275 Fed. Rep. 343; *Spencer Kellog & Sons, Inc.* v. *Providence Churning Co.* 45 R. I. 180. Williston on Sales § 589.

The plaintiff dealt with the defendant for the sale of goods sold in the open market; he is entitled to the fruits of his contract and to be placed in as good a position as he would have been, if the defendant had fulfilled his contract. See *Leavitt* v. *Fiberloid Co.* 196 Mass. 440, 445.

A verdict could not have been directed for the defendant. There was evidence that the plaintiff had in all respects complied with the contract. The defendant's motion for a directed verdict was denied properly. The defendant asked for certain requests, but no exception was taken to the refusal to give them, before the charge to the jury. Rule 45 of the Superior Court (1923).

The judge's charge is not reported and no exception appears to have been taken to it; he supposed that the only question reserved related to damages; and the conversation between counsel and the judge at the close of the charge shows this to be so. The questions now argued by the defendant relate to the matter of an anticipatory breach, and that the plaintiff's action was prematurely brought. There is nothing in these contentions: the action was not brought until the time for full performance had passed. Moreover, the defendant's breach went to the essence of the contract; it was a material breach, occurring after performance had begun under the contract, and for this breach the plaintiff could have sued at once and recovered the entire damages. *Speirs* v. *Union Drop Forge Co.* 180 Mass. 87, 91, 92. *Barrie* v. *Quinby*, 206 Mass. 259, 267.

The plaintiff is entitled to the larger sum based on the difference between the contract and the market price, and judgment in the sum of $24,665.06 is to be entered for the plaintiff, with interest from the date of the finding, June 13, 1923.

*So ordered.*