H. B. W. SNELLING, trustee in bankruptcy, *vs.* HARRY DINE.

Essex.    January 10, 1930. — March 3, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Damages,* In contract. *Sale,* Seller's rights, Warranty. *Contract,* Performance and breach. *Practice, Civil,* Exceptions: whether error harmful. *Evidence,* Of breach of warranty.

At the trial of an action for damages suffered by a manufacturer of refrigerators by reason of a breach of a contract to purchase fifty refrigerators of a certain trade name, it appeared that the plaintiff had on hand sufficient materials to assemble all the refrigerators, that he assembled ten of the fifty ready for delivery, and that the defendant accepted seven but refused to accept any of the remaining forty-three, forty of which the plaintiff never assembled. The judge charged the jury in substance that, if they should find for the plaintiff, the measure of damages would be the difference, if any, between the con-

tract price and the fair market value of completed refrigerators at the time of the refusal by the defendant to accept them. *Held*, that

(1) The charge was error so far as it applied to the forty unassembled refrigerators;

(2) The measure of damages as to the forty unassembled refrigerators was governed by G. L. c. 106, § 53 (4);

(3) Rulings, requested by the plaintiff, that, if the jury found that the defendant broke the contract, the plaintiff's damages as to refrigerators not manufactured was the difference between the contract price and the cost of manufacture after making due allowance for the value of materials the plaintiff had on hand; and that, if the jury found that the plaintiff had in his possession all the parts necessary to manufacture forty refrigerators, then the cost of manufacture to the plaintiff was the fair market value of such parts at the time when the defendant should have taken the refrigerators plus the reasonable labor cost of assembling the same, should have been given.

A fair inference from the amount of a verdict for the plaintiff at the trial of the action above described was that it represented only the damages for failure to accept the three completed refrigerators, and did not include any damages for breach of the agreement to accept the remaining forty, and a contention by the defendant, that the plaintiff was not harmed by the error of the trial judge above described, was *held* to be unsound.

In his answer in the action above described, the defendant set up a claim in recoupment, based on an alleged breach of implied warranty of merchantability of the goods which were the subject of the contract, and at the trial offered testimony of several witnesses who had purchased of the defendant four of the seven refrigerators which the defendant had accepted from the plaintiff and had paid for, to the effect that one of them did not "form cubes"; as to a second, that the frosting did not work uniformly; that a third made ice cubes for about a week, thereafter the belt broke, and, although he replaced it with a new one, the refrigerator did not make ice cubes. The record did not disclose evidence showing whether the failure of the refrigerators to perform their full function was due to defective installation, improper operation or control of the mechanism, or to inherent imperfections. The judge excluded the evidence for the reason that it would not "justify recoupment on the ground that the goods were unmerchantable." *Held*, that

(1) The exclusion was proper;

(2) The goods having been sold by their trade name, there was no implied warranty of fitness for any particular purpose;

(3) Although there was an implied warranty of the merchantability of the goods according to the trade name, the evidence excluded had no tendency to show that the defendant did not purchase refrigerators which were salable in the market as refrigerators of the plaintiff's trade name;

(4) The fact that those refrigerators purchased by the defendant were inferior in quality, in that they did not operate efficiently, did not, alone, warrant a finding that they were unmerchantable.

It appearing that the only evidence presented to the jury on the question of breach of warranty by the plaintiff was that the defendant had received complaints from customers, and that "he could not sell the refrigerators that worked the way those first seven did," the defendant was not entitled to have the jury instructed on the question, whether there had been a breach of an implied warranty.

It appearing that the defendant in the action above described had refused to accept from the plaintiff forty of the fifty refrigerators which he had agreed to purchase, there was evidence which warranted a finding that there was a breach by the defendant of his contract to accept and pay for the goods and it was proper to refuse to order a verdict for the defendant.

CONTRACT for breach by the defendant of a contract to purchase refrigerators of the Socold Refrigerating Corporation, of which the plaintiff was trustee in bankruptcy. Writ in the District Court of Southern Essex dated December 6, 1928.

On removal to the Superior Court, the action was tried before *McLaughlin*, J. Material evidence is stated in the opinion. A motion by the defendant that a verdict be ordered in his favor was denied. Requests for rulings presented by the plaintiff at the close of the evidence and refused by the judge are quoted in the opinion. Those presented by the defendant and refused by the judge were as follows:

"8. If the court should rule as a matter of law that the contract is such that no parol evidence will be allowed to vary or alter it this does not prevent the jury from considering the application of the implied warranty of merchantability, providing the necessary requisites for such a consideration are present."

"12. When an article is sold by a trade name there is an implied condition of the merchantability of the goods answering to such trade name.

"13. The fact that goods are bought for resale is one of the elements necessary to the establishment of the implied warranty of merchantability and the plaintiff has admitted he knew the defendant bought for resale."

"17. A contract to sell or a sale by description is one where the identification of the goods which are the subject matter of the bargain depends upon the description.

"18. If the jury should find that this bargain constituted a sale or a contract to sell goods by description, then, if it appears that the defendant relied upon the seller to furnish such goods, there arose an implied warranty of merchantability.

"19. The requirement when it exists that goods shall be merchantable means they must be of such quality as to be fairly saleable.

"20. The requirement when it exists that goods shall be merchantable means that the goods shall be saleable as goods of general kind which they were described or supposed to be when bought."

Material portions of the charge to the jury are described in the opinion.

There was a verdict for the plaintiff in the sum of $117.75. Both parties alleged exceptions.

*J. W. Sullivan, J. F. Doyle, & J. Kaufman,* for the defendant, submitted a brief.

*H. B. Cabot, Jr.,* for the plaintiff.

CROSBY, J. This action, brought by the plaintiff as trustee in bankruptcy of the Socold Refrigerating Corporation, is to recover for the alleged breach of a contract under which the defendant, in July, 1928, ordered of the plaintiff fifty "Socold Refrigerators" of specified sizes, the price being $100 "each f.o.b. factory . . . to be delivered and paid for as soon as ready." This order was accepted by the plaintiff. The case is before this court on exceptions of both parties. The plaintiff excepted to that part of the charge to the jury which dealt with the question of damages, and to the refusal to give certain rulings in connection therewith. The defendant excepted to the exclusion of evidence and to the disposition of certain requests for rulings.

When the plaintiff was appointed trustee in bankruptcy, the refrigerating corporation had been engaged in the manufacture of refrigerators. At the time the contract between the parties was entered into, there were no refrigerators, of the sizes therein specified, assembled and ready for delivery in the possession of the plaintiff, but he did have

the component parts necessary for their manufacture. The completed product consisted of the following parts: a cabinet, motor, freezer, condenser, frost unit, thermostat, expansion valves and tubing. The plaintiff proceeded to assemble and complete ten refrigerators of the sizes called for by the contract, and shortly thereafter notified the defendant that they were ready for delivery. The defendant at that time refused to take them and subsequently continued to do so, although at various times he accepted and paid for seven of them. The three remaining which had been assembled were finally disposed of for $185. The additional forty refrigerators which the defendant had agreed to purchase were never assembled, and the parts which would have been used to make them were sold separately as parts.

The only testimony relating to damages was that of one McIntosh, who was in general charge of the business of the plaintiff in the manufacture and sale of refrigerators. On the question of damages, the plaintiff requested the trial judge to give the following instructions: "(18). If the jury finds that the defendant broke the contract, the plaintiff's damages as to refrigerators not manufactured is the difference between the contract price and the cost of manufacture after making due allowance for the value of materials the plaintiff had on hand"; and "(19). If the jury finds that the plaintiff had in his possession all the parts necessary to manufacture forty refrigerators then the cost of manufacture to the plaintiff is the fair market value of such parts at the time when the defendant should have taken the refrigerators plus the reasonable labor cost of assembling the same." These instructions were refused, and the trial judge instructed the jury in substance that if they should find for the plaintiff, the measure of damages would be the difference, if any, between the contract price and the fair market value of completed Socold refrigerators at the time the goods ought to have been accepted, or if no time was fixed for acceptance then at the time of refusal to accept. The plaintiff excepted to the instructions so given, and to the refusal to give the rulings above set forth.

It is an elementary principle in the law of damages that, where a contract is broken, the promisee is entitled to be placed in as good position as he would be in had the promisor fulfilled his contract. *Garfield & Proctor Coal Co.* v. *New York, New Haven & Hartford Railroad,* 248 Mass. 502, 507. It was said in *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, at page 21: "The fundamental principle of law upon which damages for breach of contract are assessed is that the injured party shall be placed in the same position he would have been in, if the contract had been performed, so far as loss can be ascertained to have followed as a natural consequence and to have been within the contemplation of the parties as reasonable men as a probable result of the breach, and so far as compensation therefor in money can be computed by rational methods upon a firm basis of facts." Having this principle in mind, we consider first the measure of damages applicable to the forty refrigerators that were never completed.

If the defendant had performed his agreement to accept and pay for the refrigerators, the plaintiff would have realized a profit amounting to the difference between the contract price and the cost of the component parts, plus the cost of assembling them into the completed refrigerators. Because of the defendant's breach, these refrigerators were not assembled, and the plaintiff never received for them the market price of completed Socold refrigerators. The plaintiff was under no obligation to continue, for the benefit of the defendant, to manufacture the refrigerators, expend money in their assembling, and take the risk attendant on finding a market for them. Besides, the plaintiff could not enhance damages by assembling parts and completing the refrigerators after notice that the defendant refused to receive them. *Cumberland Glass Manuf. Co.* v. *Wheaton,* 208 Mass. 425. *Roehm* v. *Horst,* 178 U. S. 1. *Meyer Brothers Drug Co.* v. *McKinney,* 137 App. Div. (N. Y.) 541, affirmed 203 N. Y. 533. The rule stated in *Daniels* v. *Newton,* 114 Mass. 530, is not applicable to the facts in the present case. If the difference between the contract price and the market price is taken as the measure of damages, it must be on the

assumption that the plaintiff at the time of the breach, or subsequently, had in his possession the goods contracted for and that these goods could be sold in the open market. *Garfield & Proctor Coal Co.* v. *New York, New Haven & Hartford Railroad, supra.* Williston on Sales (2d ed.) § 582. To apply the rule of damages as stated by the trial judge in respect to the forty uncompleted refrigerators, is to ignore the fact that they never came into existence and that the plaintiff never received their market value. The application of this rule would not place the plaintiff in the position he would be in had the defendant fully performed his obligations under the contract.

Under the provisions of G. L. c. 106, the same result follows. Section 53 (3) is applicable only when the goods agreed to be sold are in existence at the time of the defendant's breach, or, as in *Garfield & Proctor Coal Co.* v. *New York, New Haven & Hartford Railroad, supra,* when they subsequently came into existence. Williston on Sales (2d ed.) §§ 582, 583a. G. L. c. 106, § 53 (4) reads: "If, while labor or expense of material amount are necessary on the part of the seller to enable him to fulfil his obligations under the contract to sell or the sale, the buyer repudiates the contract or the sale, or notifies the seller to proceed no further therewith, the buyer shall be liable to the seller for no greater damages than the seller would have suffered if he did nothing toward carrying out the contract or the sale after receiving notice of the buyer's repudiation or countermand. The profit which the seller would have made if the contract or the sale had been fully performed shall be considered in estimating such damages." Upon the facts disclosed by the record, this clause is applicable to the uncompleted refrigerators. Where the buyer agrees to purchase goods to be manufactured by the seller and repudiates the contract before the manufacture has been completed, the measure of damages is based not on the market value of the product but on the difference between the cost of manufacture and the contract price. *Bullard* v. *Eames,* 219 Mass. 49, 54. *Star Fuse Co. Inc.* v. *Prussian,* 248 Mass. 126. *Roehm* v. *Horst, supra. United States* v. *Purcell Envelope*

*Co.* 249 U. S. 313. *Kingman & Co.* v. *Western Mfg. Co.* 92 Fed. Rep. 486. *Solomon* v. *Waterbury Brass Goods Corp.* 6 Fed. Rep. (2d) 990. *Meyer Bros. Drug Co.* v. *McKinney, supra. White & Hamilton Lumber Co.* v. *Lynch,* 159 Ga. 283. It follows that the instructions, so far as they related to the forty refrigerators which had not been manufactured when the defendant repudiated the contract, were erroneous, and that the plaintiff's requests numbered eighteen and nineteen in substance should have been given.

It is the contention of the defendant that, if the charge was erroneous in this respect, the plaintiff was not harmed. It is apparent, however, from the amount of the verdict that this contention is not sound. The jury found for the plaintiff in the sum of $117.75. The three refrigerators which were complete at the time of the defendant's breach were sold for $185. The contract price for each was $100. It may fairly be inferred that the amount of the verdict represents only the damages for failure to accept the three completed refrigerators, and does not include any damages for breach of the agreement to accept the remaining forty. In view of the evidence on the question of damages, the jury could not have included in their verdict the profit the plaintiff would have made on the forty refrigerators, adopting as the measure of damages the difference between the contract price and the market value.

The rule of damages applicable to the three refrigerators that had been manufactured at the time of the defendant's breach is stated in G. L. c. 106, § 53 (3). The measure of damages for refusal to accept them is the difference between the contract price and their market value at the time of the defendant's refusal to accept them. *Tufts* v. *Bennett,* 163 Mass. 398. *Moffat* v. *Davitt,* 200 Mass. 452. *Barrie* v. *Quinby,* 206 Mass. 259. *Rosenthal* v. *Green,* 247 Mass. 153. *Garfield & Proctor Coal Co.* v. *New York, New Haven & Hartford Railroad, supra.* Williston on Sales (2d ed.) §§ 582, 583a.

It is stated in the defendant's exceptions that they are to be considered by this court only in the event that the plaintiff's exceptions are sustained. As the plaintiff's excep-

tions must be sustained for the reasons already given, it becomes necessary to deal with the defendant's exceptions which relate to the denial of a motion to direct a verdict in his favor, to an offer of proof made by him, and to the refusal to grant certain requests for rulings. The answer contains a claim for recoupment, based on the alleged breach of an implied warranty of merchantability of the goods which were the subject of the contract. During the course of the trial, the defendant offered evidence for the purpose of showing that the goods were unmerchantable and unsalable. The evidence consisted of the testimony of several witnesses who had purchased from the defendant Socold refrigerators, delivered to him by the plaintiff under the contract hereinbefore referred to. The evidence was offered in the absence of the jury. These purchasers testified that the refrigerators gave considerable trouble, were not efficient in operation and were unsatisfactory. Of the seven refrigerators sold by the defendant, there were complaints respecting four. One of the purchasers testified that the refrigerator did not "form cubes"; another, that the frosting did not work uniformly; a third, that the refrigerator purchased by him made ice cubes for about a week, thereafter the belt broke, and, although he replaced it with a new one, the refrigerator did not make ice cubes. None of these refrigerators was returned to the defendant, nor did the purchasers offer to return them.

The foregoing testimony was excluded by the trial judge, subject to the defendant's exception, for the reason that the evidence would not "justify recoupment on the ground that the goods were unmerchantable." This ruling was correct. The goods having been sold by their trade name, there was no implied warranty of fitness for any particular purpose. G. L. c. 106, § 17 (4). There was an implied warranty of the merchantability of the goods according to the trade name, as the plaintiff knew that the defendant was purchasing them for purposes of resale. *Parker* v. *S. G. Shaghalian & Co. Inc.* 244 Mass. 19, 22. *Standard Rice Co. Inc.* v. *P. R. Warren Co.* 262 Mass. 261, 264, 265. *Raymond Syndicate, Inc.* v. *American Radio & Research*

*Corp.* 263 Mass. 147.   There was no evidence that the defendant did not purchase refrigerators which were salable in the market as Socold refrigerators.   The fact that those purchased by the defendant were inferior in quality, in that they did not operate efficiently, does not, alone, warrant a finding that they were unmerchantable.   *Gossler* v. *Eagle Sugar Refinery*, 103 Mass. 331.   *Inter-State Grocer Co.* v. *George William Bentley Co.* 214 Mass. 227.   *Stoehrer & Pratt Dodgem Corp.* v. *Greenburg*, 250 Mass. 550, 552.   *Acorn Silk Co.* v. *Herscovitz*, 250 Mass. 553.

The cases of *Parker* v. *S. G. Shaghalian & Co. Inc. supra*, and *Raymond Syndicate, Inc.* v. *American Radio & Research Corp. supra*, are distinguishable.   In those cases there was evidence that the goods were wholly unfit for the purposes for which they were bought, and in fact were unmerchantable under their trade name in the ordinary course of business.   Whether the cause of the failure of the refrigerators in the case at bar to perform their full function was due to defective installations, improper operation or control of the mechanism, or was due to inherent imperfections in the refrigerators, does not appear from the record.

The defendant excepted to the refusal of the trial judge to give certain rulings relating to the law of warranty.   The only evidence presented to the jury upon this question was the testimony of the defendant that he had received complaints from customers, and that "he could not sell the refrigerators that worked the way those first seven did."   That testimony did not entitle the defendant to have the instructions given dealing with implied warranty of merchantability.   They were not applicable upon the testimony and were rightly denied.   *Wilson* v. *Lawrence*, 139 Mass. 318.

In dealing with the defendant's exception to the refusal of the judge to direct a verdict in his favor, it is sufficient to say that it appears in the plaintiff's exceptions, which by reference are incorporated in the defendant's exceptions, that the defendant refused to take any of the refrigerators involved in this suit; and there was evidence which warranted a finding that there was a breach by the defendant

of his contract to accept and pay for the goods. This exception cannot be sustained.

It follows that the plaintiff's exceptions are sustained, and those of the defendant are overruled. A new trial is to be limited to the question of damages.

*So ordered.*