Pettingell, J.
Action of contract. The declaration contained two counts, one to recover the price of certain machines ordered by the defendant from the plaintiff, and the other, to recover for refusing to accept the said machines. The answer is a general denial and the statute of frauds. There was a finding for the plaintiff. The report contains all the evidence material to the issues involved.
The defendant’s original claim of error consisted of the admission over its objection of evidence, the giving of rulings requested by the plaintiff and the denial of rulings requested by the defendant. At the oral argument the defendant waived all of its claims except those arising out of the denial of the rulings requested by it.
The essential facts are that, after correspondence and a telephone conversation, the defendant, on June 20, 1931, wrote the plaintiff ordering five machines, four of which were to be rebuilt machines, at specified prices, the machines to be sent to a designated place, and to be “subject to our inspection and acceptance”.
The plaintiff, who specialized in rebuilt machines, had, in anticipation of this order, acquired all the machines ordered and had rebuilt three of them. He at once proceeded to do what was necessary to the other two. No communicatian passed from the plaintiff to the defendant until June 24th, when the defendant telegraphed the plaintiff, “Hold shipment machines Kentucky States Reformatory writing’ ’. Upon the receipt of this telegram, the plaintiff the same day wrote the defendant:
“We just received your telegram * * *.
We have the shipment all ready to go forward except the Heeler. This machine was purchased yesterday, and will be ready in a day or two.”
*169 The initial queston is whether, upon these facts, there was a contract between the parties.
It is plain that such transactions as there were prior to the defendant’s letter of June 20th did not constitute a contract. What passed between the parties before that date was wholly preliminary and preparatory, requests for information and answers to the same, which committed neither party to anything.
On June 20th, the defendant for the first time communicated something to the plaintiff which was definitely more than an inquiry. It was unquestionably an offer to purchase designated machines at specified prices. It was, however, only an offer. It could not ripen into a contract until it was accepted by the plaintiff.
The plaintiff contends that it was not simply an offer, but an engagement on the part of the defendant to take the machines if the plaintiff would rebuild them, and that, by acquiring material and applying labor, the plaintiff accepted the defendant’s offer so that the defendant became liable. In other words, according to the plaintiff, the defendant’s communication of June 20th was an offer to pay for rebuilt machines if the plaintiff would rebuild them, which was accepted by the plaintiff commencing the rebuilding.
We cannot accept this view of the transaction. It appears from the report that when the defendant’s order was received, three of the five machines were then all ready for delivery. It is doubtful if such a contract as the plaintiff contends for can be based on an acceptance made before the offer is received.
On the other hand, it also appears from the report that the business of the plaintiff was that “of buying and selling second-hand machinery”. The Massachusetts cases recognize a distinction between a contract to manufacture an article specially for the one ordering and a contract of sale *170 of an article, Mixer v. Howarth, 21 Pick. 205, at 207; contracts for the future delivery of machines have been held to be contracts for the furnishing of labor and materials, and not contracts of sale, Spencer v. Cone, 1 Metc. 283, at 284; Blaisdell v. Souther, 6 Gray, 149, at 152; the rule, however, is as stated in Goddard v. Binney, 115 Mass. 450, at pages 454, and 455,
“The effect of these decisions we understand to be this, namely, that a contract for the sale of articles then existing, or such as the vendor in the ordinary course of his business manufactures or procures for the general market, whether on hand at the time or not, is a contract for the sale of goods to which the statute (of frauds) applies. But on the other hand, if the goods are to be manufactured especially for the purchaser, and upon his special order, and not for the general market, the case is not within the statute.”
See also, Gardner v. Joy, 9 Metc. 177, at 179; Lamb v. Crafts, 12 Metc. 353, at 356; Clark v. Nichols, 107 Mass. 547, at 548; New England Cabinet Works v. Morris, 226 Mass. 246, at 251; M. K. Smith Corp. v. Ellis, 257 Mass. 269, at 271.
Considering the nature of the plaintiff’s business; that it was the ordinary course of his business to manufacture or to procure rebuilt machinery for the general market; that it appears from the report that there was at that time a market value for all five of the machines ordered, we are of the opinion that the defendant’s letter of June 20th was an offer to buy machines and not an offer to take them if the plaintiff would rebuild them. It was the first step in a contract of sale.
In our opinion, also, the plaintiff’s letter of June 24th, after the receipt of the telegram, was an acceptance of this offer unless by the telegram the offer of the defendant was withdrawn. The telegram on its face does not cancel or *171 terminate anything. It calls for a suspension of activities, and states that further information is on the way by mail.
As the offer made by the defendant had not been accepted by the plaintiff before the telegram was sent, the telegram could have acted as a revocation of that order, if it clearly displayed an intention to revoke,
“What communication amounts to a revocation is a question of construction. Any statement which clearly implies unwillingness to contract according to the terms of the order is sufficient, though the word revoke is not used.” Williston on Contracts, (1920 Ed.) Yol. I §55.
“A letter by one who had ordered advertising matter asking that it be not forwarded until he felt in a better condition to handle it was not a sufficient revocation of the order.” Outcoult Advertising Co. v. Buell, 71 Or. 52,141 P. 1020. (cited in the note to §55, Willis-ton on Contracts, cited above.)
The telegram was not immediately followed by any letter from the defendant and it was not until July 10th, fourteen days after the telegram was sent, and after the plaintiff had written the defendant three letters, that the defendant wrote the plaintiff to the effect that it had been asked by the ultimate purchaser to “withhold shipment”, and asking the plaintiff to “continue to hold shipment” until the defendant had the purchaser’s final instruction. It thus appears that the explanation of the “Hold Shipment” telegram is not that it was a revocation of the order, but that it was merely a request for postponement of delivery for the convenience of the defendant and its purchaser.
Under these circumstances there was no revocation of the order, and the plaintiff’s letter of June 24th, being sufficient to constitute an acceptance of the unrevoked order, a contract came into existence represented by the order of June 20th, and the acceptance of June 24th.
Upon these facts it was error for the trial judge to rule that the question whether there was a contract was not a *172 question of law (denial of defendant’s 1st request). The fact that a part of the preliminary transaction was carried on over the telephone does not enter into the matter; the vital elements were the defendant’s letter of June 20th, and the plaintiff’s letter of June 24th. These two items constituted a contract by which all the preliminary negotiations were superseded and became of no effect. Star Fuse Co. Inc. v. Prussian, 248 Mass. 126, at 134, 135. The question whether these communications constituted a contract was a question of law for the court. Smith v. Faulkner, 12 Gray 251, at 256; Davis v. England, 141 Mass. 587, at 590; Kehlor Flour Mills Co. v. Linden, 230 Mass. 119, at 122; DeVito v. Boehmer &c. Rauch Co., 239 Mass. 290, at 294, 295; Bresky v. Rosenberg, 256 Mass. 66, at 75; as was also the interpretation to be given to the contract, if one was made. Roberts v. Lynn Ice Co., 187 Mass. 402, at 408; Goldstein v. D’Arch, 201 Mass. 312, at 317; Erickson v. George B. H. Macomber Co., 211 Mass. 311, at 317; Spevack v. Budish, 238 Mass. 215, at 217, 218.
The error noted above is not, however, prejudicial because the trial judge found as a fact that there was a contract, Smith v. Faulkner, 12 Gray 251, at 256.
As there was no delivery of the machines to the defendant, and no waiver by the defendant of any of the terms of the contract, the plaintiff could not recover the contract price unless he had complied with G. L. (Ter. Ed.) Ü. 106, §52 (3). This the plaintiff contends he has done, and the trial judge so finds, by sending the defendant the following letter, dated September 14, 1931:
“We have your letter of September 11th, regarding the machines ordered from us to be shipped to the Kentucky State Reformatory, and we see no reason why we should 'be obliged to wait indefinitely for the money on this order.
*173 You placed the order with us, we have the machinery-ready for shipment, and have had for some time. In fact, the Heeler and Loose Nailer were bought especially for you. We believe, under the conditions, you should send us one-half payment on this order, and we will hold the machines for your further instructions.
Looking forward to hearing from you at an early date, we are ”
It may be an open question whether this letter could be a sufficient compliance with Gr. L. (Ter. Ed.) C. 106 §52 (3), which calls for “an offer to deliver the goods to the buyer, and, if the buyer refuses to receive them”, provides that the seller “may notify the buyer that the goods are thereafter held by the seller as bailee for the buyer”. The letter set forth above is the only communication dealing with this aspect of the case which passed from the plaintiff to the defendant. It contains no offer of delivery, and such notice as is in it is given without waiting for any refusal by the buyer to receive delivery. The section seems to require two communications, one tendering delivery, the other constituting notice of a new relation growing out of the refusal to accept delivery.
We feel, however, that there is a more serious objection to the plaintiff constituting himself a bailee by means of this communication, because, in our opinion, Gr. L. (Ter. Ed.) C. 106, §52 (3) does not apply to the case at all. Such application is predicated upon the second clause in the section, “if they cannot readily be re-sold for a reasonable price”.
In the case at bar, it appears, from the findings of the trial judge, that on June 29, 1931 there was a ready market for two of the machines but that there was not a ready market for the other three, although on that date they could have been sold “at prices equal to 60% of the prices set forth in the plaintiff’s declaration”. The goods order *174 ed by the defendant were therefore goods which could have been readily “re-sold for a reasonable price”, 60% being reasonable under all the circumstances of this case.
In this state of affairs, §52 (3) did not apply and the plaintiff was not entitled to hold the machines as bailee. His duty was to sell the machines and convert them into cash when he would then be in a position to recover under Q-. L. (Ter. Ed.) C. 106, §53. It is to be noted that the defendant advised such a sale.
As the plaintiff could not recover in any instance under Section 52 (3),' it was prejudicial error to refuse the defendant’s tenth and eleventh rulings requested, as well as the twelfth ruling requested which stated the true rule of damages, that contained in §53 (3), the difference between the contract price and the market or current price.
The finding for the plaintiff in the amount of the contract price of $1735 is to be vacated and judgment is to be entered for the plaintiff on the second count, for defendant’s failure to accept the machines, in the amount of $640.